[S. F. No. 16536. In Bank.—July 2, 1941.]

HOLLY SUGAR CORPORATION (a Corporation), Appellant, v. CHARLES G. JOHNSON, as State Treasurer, etc., Defendant; CHAS. J. McCOLGAN, as Franchise Tax Commissioner, etc. · (Substituted Defendant), Respondent.

Morrison, Hohfeld, Foerster, Shuman & Clark, Herbert W. Clark and W. T. Fitzgerald for Appellant.

Earl Warren, Attorney General, and H. H. Linney, Valentine Brookes, and James J. Arditto, Deputies Attorney General, for Respondent.

CURTIS, J.—This action was brought to recover from the state an additional corporation franchise tax in the amount of $6,100.58, alleged to have been illegally assessed and collected for the taxable year ending March 31, 1935, and paid

by plaintiff under protest. A general demurrer to the complaint was sustained without leave to amend.

The facts giving rise to the present controversy are as follows: Plaintiff, Holly Sugar Corporation, is a New York corporation, having its principal office in Colorado and qualified to do business in California and other states. Its principal business consists of growing sugar beets and marketing and refining the sugar therefrom. Prior to January 1, 1928, plaintiff acquired 4173.4 shares of the capital stock of Santa Ana Sugar Company, a California corporation, at a cost of $1,808,253. The number of shares so purchased constituted 70 per cent of the total outstanding capital stock of the Santa Ana Sugar Company, and after the acquisition of this stock the plaintiff ''controlled the policies and operations of the said Santa Ana Sugar Company,'' which was engaged in California in growing sugar beets and marketing and refining the sugar therefrom. On May 1, 1928, the Santa Ana Sugar Company paid a dividend of $111,188.24 from surplus accumulated prior to March 1, 1928, and thereby reduced, for franchise tax purposes, the cost of said 4173.4 shares to $1,697,064.76. During the fiscal year ending on March 31, 1934, the Santa Ana Sugar Company was completely liquidated, and plaintiff received as a liquidating dividend certain properties of the fair market value of $530,191.17. Thus, the plaintiff, Holly Sugar Corporation, ''suffered an uncompensated loss of $1,166,873.59 in the transaction.'' The franchise tax commissioner refused to consider this loss in computing the tax, and an additional assessment was levied in the amount of $5,759.79, which together with $340.79 interest thereon, plaintiff paid under protest—the total exaction being $6,100.58. A copy of the verified protest setting forth the grounds of plaintiff's objections was attached to the complaint, marked ''Exhibit A,'' and incorporated by reference.

The tax subject of dispute was levied under the provisions of section 10 of the California Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19; amended by Stats. 1931, p. 2226 [Deering's Gen. Laws, 1931, Act 8488]), which, so far as here involved, read as follows:

''If the entire business of the bank or corporation is done within this state, the tax shall be according to or measured by its entire net income; and if the entire business of such

bank or corporation is not done within this state, the tax shall be according to or measured by that portion thereof which is derived from business done within this state. The portion of net income derived from business done within this state, shall be determined by an allocation upon the basis of sales, purchases, expenses of manufacturer, pay roll, value and situs of tangible property, or by reference to these or other factors, or by such other method of allocation as is fairly calculated to assign to the state the portion of net income reasonably attributable to the business done within this state and to avoid subjecting the taxpayer to double taxation.''

 The precise question raised by this appeal has not heretofore been presented to this court. The single issue to be determined is whether, under the terms of the Franchise Tax Act, the appellant, a New York corporation having its principal office in Colorado, but qualified to do business in California, and having control of the policies and operations of a California corporation through ownership of 70 per cent of the latter company's capital stock, is entitled to deduct a loss sustained on liquidation of the domestic company, whose business within the state was the same in character as the unitary business of appellant within and without the state. If, under these circumstances or conditions, appellant should not be allowed to include such stock loss in computing the net income for measure of the California franchise tax, then the demurrer was properly sustained; otherwise not.

In support of its position appellant advances two arguments: (1) that under the terms of the act, the franchise tax for a foreign corporation doing business within and without the state is to be measured by application of the allocation formula to the *entire* net income, however or wherever derived, in order to ascertain the portion attributable to business done in California; and (2) that in any event the integration of the operations of the Santa Ana Sugar Company with the activities of appellant's multistate sugar business fixed the situs of the stock loss in California and established the propriety of the claimed deduction. It is our opinion that the force and logic of this latter contention are decisive of this appeal in favor of appellant and eliminate any necessity for treatment of the first proposition, with its attendant considerations of statutory interpretation. At this point

with the controversial issue so limited in scope, both appellant and respondent agree that the function of the apportionment principle outlined in section 10 is to assign to California the portion of *unitary* net income "derived from business done within this state."

It is well settled that stocks, bonds and other intangible property have a taxable situs, under the fiction of *mobilia sequuntur personam*, at the domicil of the owner. (*Miller* v. *McColgan*, 17 Cal. (2d) 432 [110 Pac. (2d) 419].)

The stockholder is not the owner of the property of the corporation, and the state which has jurisdiction of any of the corporate property has not *pro tanto* jurisdiction of his shares of stock. (*Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, 81 [46 Sup. Ct. 256, 70 L. Ed. 475].) The shareholder becomes the owner of the corporate property and earnings only upon the corporation's declaration of dividends or liquidation, and the resulting gain or loss for the shareholder has its source in the stock, which by reason of identity or association with the person of the owner, has its situs at his domicil. (*Miller* v. *McColgan*, 17 Cal. (2d) 432 [110 Pac. (2d) 419].) In reliance upon these fundamental principles of taxation, respondent insists that the stock loss sustained by appellant, a foreign corporation, because of the liquidation of the California company, has no relation to the jurisdiction of this state insofar as its taxing power is concerned, and respondent declares this was the basis for his disallowance of the deduction claimed by appellant in its tax report.

As an exception to the general rule embodied in the legal maxim *mobilia sequuntur personam*, it is equally well settled that intangible property may acquire a situs for taxation other than at the domicil of the owner if it has become an integral part of some local business. (*First Bank Stock Corp.* v. *Minnesota*, 301 U. S. 234 [57 Sup. Ct. 677, 81 L. Ed. 1061]; *Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193 [56 Sup. Ct. 773, 80 L. Ed. 1143]; *Metropolitan Life Insurance Co.* v. *New Orleans*, 205 U. S. 395 [27 Sup. Ct. 499, 51 L. Ed. 853]; *State Board of Assessors* v. *Comptoir National*, 191 U. S. 388 [24 Sup. Ct. 109, 48 L. Ed. 232].) Business situs arises from the act of the owner of the intangibles in employing the wealth represented thereby, as an integral portion of the business activity of the particular place, so that it becomes

identified with the economic structure of that place and loses its identity with the domicil of the owner. (*New Orleans* v. *Stempel*, 175 U. S. 309 [20 Sup. Ct. 110, 44 L. Ed. 174].) This principle of economic integration with local commercial activities as definitive of business situs was recognized in this state in *Hinckley* v. *County of San Diego*, 49 Cal. App. 668 [194 Pac. 77], where it was said at pages 671, 672: There must be "something like a general, or more or less continuous, course of business or series of transactions within the state where the property is physically located, as distinguished from mere sporadic and isolated transactions."

In harmony with this line of decision, it is plain that the mere allegation of a foreign corporation that its acquisition of more than a majority of the total outstanding capital stock of a domestic company gave it control of the policies and operations of the local company, without amplification as to the manner in which its management of the domestic corporation functioned or the localization of its stockholding, does not satisfy the test of integration essential to an assignment of business situs to corporate stock. But reference to the record reveals that appellant's stockholding in the Santa Ana Sugar Company cannot reasonably be characterized as an extraneous investment separate and apart from the California business of the Holly Sugar Corporation, for both these companies were engaged in precisely the same type of enterprise—"growing sugar beets and marketing and refining sugar therefrom"—which fact furnishes support to appellant's claim that its ownership of 70 per cent of the capital stock of the domestic company was not for the purpose of passive participation in the latter's affairs in the customary and usual manner, but was with the object of controlling the policies and operations of the domestic corporation and using it as a mere adjunct, agency or instrumentality of the Holly Sugar Corporation in the conduct of the unitary business. This combination of circumstances effectively corroborates appellant's assertion of integration of the activities of the two companies into one indivisible, composite whole, each portion giving value to every other portion. It is the existence of this organic unity of operation which necessitates that the business be regarded in the aggregate and its value be estimated not in parts, but taken as a whole. (*Butler Brothers* v. *McColgan*, 17 Cal. (2d) 664 [111 Pac. (2d) 334].) Full consideration of the facts disclosed by the record be-

fore us constrains us to conclude that the stockholding in question was an integral part of appellant's unitary sugar business and that the formula principle of allocation requires that the loss sustained on liquidation of the California company be included in the tax base for the purpose of ascertaining that portion of appellant's net income "derived from business done within this state." However, respondent's objection to the propriety of this inference because of the alleged insufficiency of the pleadings compels our treatment of this additional point before making disposition of this appeal.

Appellant has presented the salient facts bearing upon the unitary nature of its business in the following manner: In the complaint Holly Sugar Corporation alleged that the Santa Ana Sugar Company was a California corporation, that it [plaintiff] owned 70 per cent of the local company's capital stock, and that after such acquisition it [plaintiff] "controlled the policies and operations of the said Santa Ana Sugar Company." In the verified protest, in addition to a reiteration of the claim of stock ownership and control of the Santa Ana Sugar Company, the Holly Sugar Corporation asserted that its "business in the states of Colorado and California and other states" consisted of "growing sugar beets and refining and marketing sugar therefrom," and that the "Santa Ana Sugar Company, until its liquidation, was engaged in the State of California in growing sugar beets and in refining and marketing sugar therefrom". The verified protest was related to the complaint in the following language: "A copy of said protest is hereto attached, marked 'Exhibit A,' and hereby referred to and made a part of this complaint as fully and to the same extent as if it were set out at large in this paragraph." Respondent, nevertheless, insists that the allegations of this exhibit are not incorporated in the complaint, are not admitted by the demurrer, and are not part of the record, so that the statements in the protest relative to the business activities of the two sugar companies can have no influence on the determination of this appeal.

It is well settled that a written instrument which is the foundation of a cause of action may be pleaded *in haec verba,* rather than according to its legal effect, either by setting forth a copy in the body of the complaint or by attaching a copy as an exhibit and incorporating it by proper reference. (*Silvers* v. *Grossman,* 183 Cal. 696, 700 [192 Pac.

534] ; *Santa Rosa Bank* v. *Paxton,* 149 Cal. 195, 198 [86 Pac. 193] ; *Lambert* v. *Haskell,* 80 Cal. 611, 613 [22 Pac. 327].) ▇ It is equally well established that an instrument which is made part of the complaint by reference and attached as an exhibit, but which does not constitute the contract upon which the complaint is based, may not supply substantial allegations essential to the statement of a cause of action unless the pleading is framed for that purpose and with that end in view. (*Silvers* v. *Grossman, supra,* at p. 700; *Santa Rosa Bank* v. *Paxton, supra,* at p. 198; *Estate of Cook,* 137 Cal. 184, 191 [69 Pac. 968].) ▇ The instant case comes precisely within this exception. The complaint directly refers to the protest not simply as evidence of compliance with the requisite procedural formality before bringing suit, but as a means of ''setting forth the grounds upon which plaintiff rests its claim,'' and for that express object a copy of the necessary document was incorporated by use of the apt words of reference above quoted. Furthermore, the protest was made under oath, which circumstance imports verity to its contents and removes any question as to the pleader's intent to make its own the averments contained in the attached exhibit. Respondent's reliance upon the two cases of *City of Los Angeles* v. *Signoret,* 50 Cal. 298, and *People* v. *Reid,* 195 Cal. 249 [232 Pac. 457, 36 A. L. R. 1435], lends no force to its position, for each of those opinions concerned defects of allegation not present in the instant pleading. The decision in *City of Los Angeles* v. *Signoret, supra,* was fully explained and distinguished in *Ward* v. *Clay,* 82 Cal. 502, 505, 506 [23 Pac. 50, 227], and *Lambert* v. *Haskell, supra,* at pp. 613, 614, and no further comment upon the points of differentiation need be made here. In *People* v. *Reid, supra,* this court, as reason for its rejection from consideration averments contained in affidavits attached to a petition, made the following significant observation at pages 260, 261: ''There is nothing in the petition which indicates that the petitioner intended to adopt and make his own the allegations contained in the affidavits, or that he intended to himself allege under oath the existence of the facts there recited.'' In the instant case the complaint's distinct and definite reference to the attached verified protest for the avowed purpose of setting forth the grounds of objection to payment of the additional tax has the effect of incorporating into the body of the complaint the recitals of the exhibit as fully and

to the same extent as if they were, in fact, directly made in the principal pleading. Accordingly, the truth of the allegations of the complaint together with those of the annexed exhibit is admitted by respondent's general demurrer, and both documents form part of the record before this court.

In light of the foregoing considerations, we are of the opinion that appellant's statement of facts reasonably supports an inference that the stock in question acquired in California a taxable situs by economic integration with appellant's unitary business in this state. Therefore, the judgment from which this appeal was taken is reversed, with directions to the trial court to overrule the demurrer and permit the respondent to answer if he so desire.

Shenk, J., Carter, J., Moore, J., *pro tem.*, White, J., *pro tem.*, and Pullen, J., *pro tem.*, concurred.

Respondent's petition for a rehearing was denied July 30, 1941. Gibson, C. J., voted for a rehearing. Edmonds, J., and Traynor, J., did not participate therein.