[S.F. No. 22757. In Bank. Dec. 28, 1970.]

SAFEWAY STORES, INCORPORATED, Plaintiff and Respondent, v. FRANCHISE TAX BOARD, Defendant and Appellant.

COUNSEL

Thomas C. Lynch, Attorney General, Ernest P. Goodman, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Appellant.

Orrick, Herrington, Rowley & Sutcliffe and William D. McKee for Plaintiff and Respondent.

Pillsbury, Madison & Sutro, John A. Sutro, Francis N. Marshall, Noble K. Gregory, Frank H. Roberts and Toni Rembe as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

BURKE, J.—Plaintiff Safeway Stores, Inc. (Safeway) recovered judgment for a refund of a portion of the franchise taxes paid to the State of California for the income years 1947 through 1950, and defendant Franchise Tax Board[1] appeals. As will appear, we have concluded that the trial court

---

[1] Amendments to the Bank and Corporation Franchise Tax Act, enacted subsequent to the 1947-1950 income years, have substituted "Franchise Tax Board" for "Franchise Tax Commissioner."

erred in its view that certain dividends paid to Safeway by its subsidiaries were not taxable under the Bank and Corporation Franchise Tax Act. Accordingly, the judgment will be reversed.

The matter was tried upon stipulated facts, which in pertinent part may be summarized as follows: Safeway, a Maryland corporation, has its commercial domicile in California. During the years 1947 through 1950 Safeway operated, directly or through subsidiary corporations, a chain of more than 2,000 retail food markets and related meat, grocery, produce and egg warehouses in 23 states, the District of Columbia and the five western provinces of Canada. In connection with its food store business Safeway, either directly or through subsidiaries, also conducted purchasing, warehousing, manufacturing and processing operations throughout the United States and Canada. Additionally, Safeway, either directly or through subsidiaries, maintained some 35 organizations which provided the entire Safeway organization with services in such fields as accounting, financing, advertising and law.

It is agreed that Safeway and its subsidiaries were engaged in a single unitary business. Accordingly, pursuant to principles established in *Edison California Stores* v. *McColgan* (1947) 30 Cal.2d 472 [183 P.2d 16], the amount of operating income earned in California by those members of the group of corporations which did business in California was determined by applying a three-factor apportionment formula to the total operating income of the entire group. The appropriateness of that procedure is not disputed.

Safeway, in addition to its own operating income, received dividends from subsidiaries engaged with it in the unitary grocery business described above. Most of such dividends were received from Canadian subsidiaries, which did business only outside California, with the balance coming from one subsidiary which did business only in California and from others which did business both in California and outside this state. These dividends were wholly paid from income from unitary business operations of the declaring corporation or from dividends paid to the declaring corporation by a subsidiary corporation out of the latter's income from unitary business operations. All of the income from which the dividends were declared had at one time been included in the combined total of the operating income of Safeway and its subsidiaries to which the Franchise Tax Board (board) had applied an apportionment formula in arriving at income attributable to California sources and thus subject to this state's franchise tax.

The only issue presented by this appeal is how those intercorporate dividends are to be taxed under the franchise tax law.

It is not disputed that the total operating income of the group, to which the apportionment formula was applied, was determined on the basis of a consolidated or combined report in which the net income of all of the corporations is consolidated and intercompany interest, sales, rents, service charges, and like items incident to operating the unitary business, are eliminated. Additionally, the board agrees that if Safeway had operated its unitary business as one corporation only, instead of through subsidiary corporations, then transfers of funds to the head office in California from branches or divisions doing business outside this state, would not constitute taxable transfers. However, the board contends that dividends paid to Safeway by subsidiary corporations from that portion of the total operating income of the group which had not been taxed by California when the apportionment formula was applied, are, under applicable statutes and case law, subject to the franchise tax. Safeway disagrees, arguing that the fact that it carries on its unitary business as a multicorporate enterprise rather than as a single corporation should not render any of its intercompany transfers of funds taxable, whether or not the transfers are in the form of dividends. In our view, however, the law was otherwise at the times here involved.

■ Under section 6 of the Bank and Corporation Franchise Tax Act (act)[2] dividends received on stocks are includable in gross income.[3] However, section 8 provides in subdivision (h)(1) that in computing net income a deduction shall be allowed for "Dividends received during the income year declared from income which has been included in the measure of the tax imposed by this act upon the . . . corporation declaring the dividends . . . ."

■ The purpose of the section 8, subdivision (h), dividend deduction is to avoid double taxation *at the corporate level* of income which has already been subjected to California taxation in the hands of the dividend-

---

[2]Unless otherwise stated, all section references hereinafter will be to the Bank and Corporation Franchise Tax Act as it read at the times here involved. (Stats. 1929, p. 19, as amended; now found in Rev. & Tax. Code, § 23001 et seq.)

[3]Under section 10 of the act, the franchise tax is to be measured only by that portion of the corporation's income which had its "source" in California. However, the "source" of dividend income is the stock upon which the dividend was paid, and the taxable situs of the stock is generally held to be at the domicile of the owner of the stock. (See *Miller* v. *McColgan* (1941) 17 Cal.2d 432, 437-440 [110 P.2d 419, 134 A.L.R. 1424]; *Robinson* v. *McColgan* (1941) 17 Cal.2d 423 [110 P.2d 426].) As stated, Safeway's commercial domicile is in California, and the taxable situs of the stock it holds in its subsidiaries is likewise in this state. (See *First Bank Corp.* v. *Minnesota* (1937) 301 U.S. 234, 237, 239-240 [81 L.Ed. 1061, 1063, 1064-1065, 57 S.Ct. 677, 113 A.L.R. 228]; *Southern Pacific Co.* v. *McColgan* (1945) 68 Cal.App. 2d 48, 68-69, 79-81 [156 P.2d 81]; cf. *Holly Sugar Corp.* v. *Johnson* (1941) 18 Cal.2d 218 [115 P.2d 8].)

declaring corporation. (See *Burton E. Green Inv. Co.* v. *McColgan* (1943) 60 Cal.App.2d 224, 232-233 [140 P.2d 451]; *Rosemary Properties, Inc.* v. *McColgan* (1947) 29 Cal.2d 677, 683, 689 [177 P.2d 757] (dissent).) When such income is eventually paid as a dividend to the ultimate stock-owning individual who is a California taxpayer, it is again includable in his gross income for California personal income tax purposes, and is of course subjected to double taxation at that point. (See Rev. & Tax. Code, § 17071.) But if in the meantime it had been paid as dividends to one or more corporations standing between the original dividend-declaring corporation and the ultimate stock-owning individual and had been subjected to California taxation in the hands of each such corporation, then absent the section 8, subdivision (h), deduction the same income could well have been taxed several times by California before what might remain of it eventually reached the hands of the ultimate individual owner.

Safeway urges that because the California apportionment formula was applied to the total operating income of the Safeway group of corporations, determined on the basis of a consolidated or combined report, it then follows that *all* of such operating income was at one time "included in the measure of the tax imposed by" the act within the meaning of the section 8, subdivision (h) dividend deduction, and that therefore all of the dividends paid to Safeway by its subsidiary corporations were entitled to the section 8, subdivision (h), deduction. This contention is fallacious. Clearly income attributed to sources outside California when the apportionment formula was applied has never been included in the measure of the tax imposed by the California act upon either the "corporation declaring the dividends" (in the language of § 8, subd. (h)), or upon any other corporation, and it is only dividends received by Safeway from such income not previously taxed by California that the board now proposes to tax. The fact that the combined or consolidated report of the group of corporations reflected total gross income and total deductions of all of the corporations, in order to arrive at the group's total net operating income to which the apportionment formula was applied, does not mean that the total gross income was included in the measure of the tax within the holding of *Rosemary Properties, Inc.* v. *McColgan, supra,* 29 Cal.2d 677.[4] That case dealt

---

[4]*Rosemary Properties* notes that "net income," as defined by the act, is the final measure by which the tax is computed (§ 4, subd. (3)); that since "net income" means "gross income less the deductions allowed" (§ 7), these factors necessarily enter into the computation and are included in the measure of the tax; that the income involved is *all* income, including earnings and profits, *attributable to California sources;* that any dividend paid from "earnings and profits"—an item of gross income entering, like the authorized deductions including the oil and gas depletion allowance, into the determination of net income—would be a dividend paid out of income included in the measure of the tax and thus under section 8, subdivision (h), exempt from tax in the hands of the recipient corporation. (Pp. 681-682 of 29 Cal.2d.)

with income "attributable to California sources" (p. 682 of 29 Cal.2d), and nothing found therein supports the view that income attributed to non-California sources, and thus not subject to taxation under the act, has nevertheless been included in the measure of the California tax.

Safeway's suggestion that the consolidated or combined report authorized by section 14 of the act,[5] to which the apportionment formula was applied, somehow constituted a "consolidated return" which had in some fashion subjected all of the income reflected in the report to the measure of the franchise tax, is equally without merit. Section 14 authorizes the board to permit or require the filing of a combined or consolidated report showing the combined net income in the case of two or more corporations owned or controlled by the same interests, and in the case of a parent corporation and subsidiary corporations. ▮ Section 10 authorizes application of the formula allocation whenever activities are partially within and partially without California.[6] (See *Edison California Stores* v. *McColgan, supra,* 30 Cal.2d 472, 476-477, 480.) ▮ In the present case, the combined or consolidated report was filed as provided by section

---

[5]Section 14 in pertinent part: "in the case of two or more corporations . . . owned or controlled directly or indirectly by the same interests, the commissioner may permit or require the filing of a combined report and such other information as he deems necessary and is authorized to impose the tax due under this act as though the combined entire net income was that of one corporation, or to distribute, apportion, or allocate the gross income or deductions between or among such corporations . . . . , if he determines that such consolidation, distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such corporations. . . .

". . . . . . . . . . . .
"In the case of a corporation liable to report under this act owning or controlling, either directly or indirectly, another corporation, or other corporations, and in the case of a corporation liable to report under this act and owned or controlled, either directly or indirectly, by another corporation, the commissioner may require a consolidated report showing the combined net income or such other facts as he deems necessary. The commissioner is authorized and empowered, in such manner as he may determine, to assess the tax against either of the corporations whose net income is involved in the report upon the basis of the combined entire net income and such other information as he may possess, or he may adjust the tax in such other manner as he shall determine to be equitable if he determines it to be necessary in order to prevent evasion of taxes or to clearly *reflect* the *net income earned* by said corporation or corporations *from business done in this State* . . . ." (Italics added.)

[6]Section 10 in pertinent part: "When the income of the . . . corporation is derived from or attributable to sources both within and without the State, the tax shall be measured by the net income derived from or attributable to sources within this State. Such income shall be determined by an allocation upon the basis of [various factors] or by reference to any of these or other factors or by such other method of allocation as is fairly calculated to determine the net income derived from or attributable to sources within this State. Income from business carried on partly within and partly without this State shall be allocated in such a manner as is fairly calculated to apportion such income among the States or countries in which such business is conducted . . . ."

14, and the allocation formula was applied under section 10, thereby attributing a portion of the group's total combined operating income to California sources and the remainder to sources outside this state. Only that portion attributed to California sources from (in the words of § 14, see fn. 5, *ante*) "business done in this State" was included in the measure of the tax imposed by the California act. And it is only such dividends as were paid from income attributed to sources outside California that the board now proposes to tax.[7] Plainly dividend income from those sources does not fall within the section 8, subdivision (h), dividend deduction.[8]

As stated, it is only dividends paid to Safeway from income not previously taxed by California that the board proposes to tax. Accordingly, to carry out the purpose of section 8, subdivision (h), and avoid double taxation of that portion of the corporate income of the Safeway group which at some time had already been included in the measure of the California tax, the board computed and allowed a section 8, subdivision (h), adjustment with respect to dividends paid from such portion. In making this adjustment the board recognized that formula allocation of the combined income of a unitary business will not ordinarily coincide with the distribution by separate accounting of earnings and profits—from which dividends are declared. If under the formula allocation a larger portion of the combined income of a group of corporations engaged in a single unitary business is attributable to California than the aggregate of the income

[7]With the enactment of section 25106 of the Revenue and Taxation Code in 1967, intercompany dividends paid from unitary income were made nontaxable. That section reads: "In any case in which the tax of a corporation is or has been determined under this chapter [Allocation of Income] with reference to the income and apportionment factors of another corporation with which it is doing or has done a unitary business, all dividends paid by one to another of such corporations shall, to the extent such dividends are paid out of such income of such unitary business, be eliminated from the income of the recipient and shall not be taken into account . . . in any . . . manner in determining the tax of any such corporation.

"In view of pending litigation concerning the proper treatment of intercompany dividends, it is not intended by enactment of this section that any inference be drawn from it in such litigation."

[8]An inspection of the returns filed by Safeway and its subsidiaries doing business in California during the years in question discloses that after the apportionment formula was applied to the total combined net income disclosed by the combined report, and the portion attributed to California sources thereby determined, a separate franchise tax return was filed on behalf of each of the corporations which did business in California, covering its portion of the total income attributed to California sources. No California returns whatever were filed by the subsidiaries which did no business in this state. Thus, contrary to Safeway's contention, Safeway and its subsidiary corporations were not taxed as a unit, as occurs in the case of a consolidated return. (See Mertens, Law of Federal Income Taxation, § 46.01 et seq.)

Additionally, since 1937, the year in which Safeway commenced reporting the combined income of its affiliated group of corporations for allocation purposes, the privilege of filing consolidated returns was limited by section 13½ of the act to groups of affiliated railroad corporations. (Stats. 1937, ch. 836, p. 2335.)

attributable to this state by the separate accounts of each member of the group, an adjustment to intercompany dividend income may be required to avoid double taxation of the same income.

As the board notes, computation of the section 8, subdivision (h), adjustment can be relatively simple in case, for example, of a corporation which does business only in California and which is engaged in a unitary business with subsidiaries which do business only outside California. If in that situation the total unitary net operating income of the group of corporations is $100,000, of which $60,000 is allocated by formula to the parent and taxed by California, then only the $40,000 balance allocated to the subsidiaries will have escaped the California tax. However, the separate books of account of the corporations might well show that $50,000 was earned by the parent in California and the other $50,000 by the subsidiaries outside the state. If the subsidiaries then pay the entire $50,000 as dividends to the California parent, it would be inappropriate to treat the entire $50,000 as taxable dividend income since only $40,000 thereof had been allocated to the subsidiaries and thus not previously taxed by California. Therefore, the board makes an adjustment whereby the $10,000 which under formula apportionment was treated as earned in California by the parent is not considered as income again when received by the parent from the subsidiaries as a dividend.

However, if the subsidiaries do business both within and without California, or have nonoperating income or other income not related to the unitary business and therefore not included in the total unitary operating income to which the formula apportionment is applied, then the computation of the section 8, subdivision (h), dividend adjustment becomes more complex. When, as in the present case, the adjustments relate to a large multicorporate grocery chain which operates through a series of subsidiaries, some of which do business only in California, some of which do business only outside of California and some of which do business both within and without California and have nonunitary as well as unitary income, then the computations grow quite involved. ▮ The method employed in the present case would allow a section 8, subdivision (h), deduction for each dividend in the ratio that the earnings and profits of each payor attributable to California bears to its total earnings and profits.[9] No error is shown.

---

[9]When, as here, the unitary income of the corporation declaring the dividend is included for purposes of allocation in the combined income of a group of affiliated corporations, the denominator of the ratio is nevertheless determined by the Franchise Tax Board from the payor's separate accounting records, which reflect the total book earnings and profits from which the dividend was paid. In determining the numerator there is included that portion of the California income attributable to the California factors of the payor, if any, adjusted for excesses or deficits arising from its actual receipt of more or less of the total California income than the amount attributable to

Safeway argues that the deductible percentage of each dividend should be the same as the percentage of the combined unitary income that was taxed by California. (That is, if California taxed 30 percent of the combined income, then 30 percent of each dividend should be deductible as coming from previously taxed income.) Such a method would obviously lead to distorted results and appears to be based on the erroneous assumption, in effect, that the Safeway group of corporations is taxable as a single entity.

it by its California factors. The following example illustrates the actual computations to be made in the application of this method to affiliated corporations. (We have translated the example furnished by the board into an example which we believe more closely parallels the facts in the present case.)

| | PARENT | Sub. 1 | Sub. 2 | Sub. 3 | Sub. 4 | TOTAL |
|---|---|---|---|---|---|---|
| 1. % of business done in Cal. .... | 100% | 0 | 0 | 30% | 60% | — |
| 2. Total allocation factors ........ | 10% | 25% | 30% | 20% | 15% | 100% |
| 3. Cal. factors (Item 1 x Item 2) ...... | 10% | 0 | 0 | 6% | 9% | 25% |
| 4. Net income on separate books.. | $ 80,000 | $300,000 | $400,000 | $160,000 | $ 60,000 | $1,000,000 |
| 5. Apportionment of total unitary income (Item 2 x Item 4 total) ... | 100,000 | 250,000 | 300,000 | 200,000 | 150,000 | 1,000,000 |
| 6. Excess of Item 4 over Item 5 .... | (20,000) | 50,000 | 100,000 | (40,000) | (90,000) | — |
| 7. Apportionment of Cal. Unitary income for taxing purposes (Item 3 x Item 4 total) .. | 100,000 | 0 | 0 | 60,000 | 90,000 | 250,000 |
| 8. Limitation: Cal. net income on separate basis (Item 1 x Item 4; or Item 7 x Item 4 Item 5 | 80,000 | 0 | 0 | 48,000 | 36,000 | |
| 9. Excess income taxed over Cal. net income on separate basis (Item 7 less Item 8) ...... | 20,000 | | | 12,000 | 54,000 | 86,000 |

In sum, Safeway has failed to establish that double taxation of the same income has resulted from the computations actually employed by the board.

The judgment in Safeway's favor is reversed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

| | PARENT | Sub. 1 | Sub. 2 | Sub. 3 | Sub. 4 | TOTAL |
|---|---|---|---|---|---|---|
| 10. Apportionment of excess (in ratio of excesses at Item 6) $\dfrac{50,000 \times 86,000}{150,000}$ | | 28,667 | | | | |
| $\dfrac{100,000 \times 86,000}{150,000}$ | | | 57,333 | | | |
| 11. Unitary income included in the measure of Cal. tax (Item 7 minus Item 9 plus Item 10) .......... | 80,000 | 28,667 | 57,333 | 48,000 | 36,000 | $250,000 |

Thus if any of the subsidiary corporations in the above example pays a dividend to its parent in California, then $\dfrac{\text{Item } 11}{\text{Item } 4}$ will equal the deductible percentage of the dividend paid from income already included in the measure of the tax on the payor.

It may be noted that the calculations of the above example may be proved by applying them to the very simple factual situation discussed in the text: Parent corporation does business only in California and its subsidiaries do business only outside this state; California allocates to this state and taxes more of the unitary income than the separate books of account show to have been earned in California; the subsidiaries then pay all of their income shown on their separate books, to parent as dividends. When the calculations of the above example are applied, the dollar amount of the dividend income previously taxed by California works out exactly equal to the arithmetical dollar amount which is easily perceived without the necessity of the example's calculations.