[S.F. No. 22852. In Bank. July 13, 1972.]

PACIFIC TELEPHONE AND TELEGRAPH COMPANY,
Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

## COUNSEL

Thomas C. Lynch and Evelle J. Younger, Attorneys General, James E. Sabine, Assistant Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Appellant.

Pillsbury, Madison & Sutro, John A. Sutro, Francis N. Marshall, Noble K. Gregory, Frank H. Roberts and Toni Rembe for Plaintiff and Respondent.

Loeb & Loeb and Frank M. Keesling as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**PETERS, J.**—Defendant Franchise Tax Board (board) appeals from a judgment in the sum of $1,324,591.96 plus interest in favor of The Pacific Telephone and Telegraph Company (Pacific) in this action for a refund of a portion of the franchise taxes paid to the State of California for the year 1960.

The problem presented relates to the interest expense deduction and more specifically the extent to which the interest paid by Pacific and its affiliated corporations should be reduced, in arriving at the interest expense deduction, by dividends received by one of the affiliated corporations from another affiliated corporation (intercompany dividends).

Pacific, a subsidiary of American Telephone and Telegraph Company, a corporation (American), is a member of a group of affiliated corporations engaged in a unitary communications business. At times pertinent to this case this unitary business (Bell System) consisted of American, Pacific and 53 other corporations. Other than Pacific, all of these corporations had their commercial domiciles and principal business operations outside of California. Pacific and three other corporations engaged in business in California. Pacific represents all four in this litigation.

In the year 1959, the dividends received by the members of the Bell System amounted to the sum of $772,122,249. Of the total dividends received the amount of $763,777,655 (intercompany dividends) was received from other members of the Bell System and $8,344,594 was received from other companies who were not members of the Bell System. Of the total intercompany dividends in the sum of $763,777,655, the sum of $95,373,025 was paid by Pacific. Included in the total amount of intercompany dividends was the sum of $2,329,250 received by Pacific from its wholly owned subsidiary, Bell Telephone Company of Nevada (Nevada Bell).

During the year 1959, the Bell System incurred interest expense in the sum of $226,715,715. The deductibility of this interest in determining the "net income" of the Bell System is at the heart of the issue in the instant litigation. Except for a small amount, the board determined that this interest expense was not deductible in arriving at such "net income." The reason for disallowance of interest expense is based on the fact that the dividends, including intercompany dividends, exceeded the interest expense. Pacific paid the taxes attributable to the disallowed interest deduction under protest and then brought the instant action for a refund. The court below, in finding in favor of Pacific's claim, held that the interest expense was a deductible item in arriving at "net income."

## INTRODUCTION

Before looking at the statutory provision governing the interest expense deduction it is helpful to consider the general scheme of the franchise tax as it applies to operating income and dividend income of corporations like members of the Bell System, doing business both within and without the State of California.

The measure of the franchise tax due from Pacific, a corporation doing business within the state, is the net income of the preceding year derived from or attributable to sources within this state. (Rev. & Tax. Code, §§ 23151, 25101.)[1]

Since Pacific is a member of a unitary business, doing business both within and without the state, the amount of operating income earned in California by the business is determined by calculating the net operating income of the entire business and then apportioning part to California by applying an apportionment formula pursuant to principles established in *Edison California Stores* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]. (*Safeway Stores, Inc.* v. *Franchise Tax Board,* 3 Cal.3d 745, 748 [91 Cal.Rptr. 616, 478 P.2d 48].) The apportionment formula resulted in a percentage of 10.3422 in this case, and the percentage is not disputed. The amount of operating income attributable to California is arrived at by multiplying the net operating income of the entire business of the Bell System by that percentage.

In addition, dividend income may be included in the computation of income. (§ 24271.) ■ As we pointed out in *Safeway,* "the franchise tax is to be measured only by that portion of the corporation's income which had its 'source' in California. However, the 'source' of dividend income is the stock upon which the dividend was paid, and the taxable situs of the stock is generally held to be at the domicile of the owner of the stock. (See *Miller* v. *McColgan* (1941) 17 Cal.2d 432, 437-440 . . . ; *Robinson* v. *McColgan* (1941) 17 Cal.2d 423 . . . .)" (3 Cal.3d at p. 749, fn. 3.) Under the doctrine of *mobilia sequuntur personam* dividend income from securities is specifically applicable to the domicile of the owner of the stock.[2] (*Fibreboard Paper Products Corp.* v. *Franchise Tax Bd.,* 268 Cal.App.2d 363, 367 [74 Cal.Rptr. 46]; *Southern Pacific Co.* v.

---

[1] Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

[2] There is an exception to the general rule to the effect that intangible property may acquire a situs for taxation other than the domicile of the owner if it has become an integral part of some local business. (*Holly Sugar Corp.* v. *Johnson,* 18 Cal.2d 218, 223 [115 P.2d 8].) No claim is made that this exception is applicable in the instant case.

*McColgan,* 68 Cal.App.2d 48, 53-56 [156 P.2d 81].) Thus, dividend income will not be allocated in relation to the operations of the corporation owning the shares but is attributed to the domicile. In other words, there is no apportionment of the dividend income as exists with respect to operating income where part of the income is attributed to one state and part to another, depending upon the extent of operations; dividend income is taxable on the basis of domicile of the shareholder.

### THE GENERAL OPERATION OF SECTION 24344

The basic provision we are called upon to construe by the parties is the phrase "interest and dividend income . . . not subject to allocation by formula" as used twice in section 24344. Section 24344 at times relevant here[3] provided as follows: "(a) Except as limited by subsection (b), there shall be allowed as a deduction all interest paid or accrued during the income year on indebtedness of the taxpayer. [¶] (b) If income of the taxpayer is determined by the allocation formula contained in Section 25101, the interest deductible shall be an amount equal to interest income subject to allocation by formula, plus the amount, if any, by which the balance of interest expense exceeds interest and dividend income (except dividends deductible under the provisions of Section 24402) not subject to allocation by formula. Interest expense not included in the preceding sentence shall be directly offset against interest and dividend income (except dividends deductible under the provisions of Section 24402) not subject to allocation by formula."[4]

---

[3]The problem we are confronted with has been largely, if not entirely, eliminated by the enactment in 1967 of section 25106. However, the Legislature recognized that litigation was pending and expressly provided in the section that "it is not intended by enactment of this section that any inference be drawn from it in such litigation."

[4]For purposes of simplicity, we shall ignore in the *illustrations* and *computations* which follow the parenthetical phrase "(except dividends deductible under the provisions of Section 24402)" which appears twice in section 24344. Section 24402 permits a deduction of dividends "declared from income which has been included in the measure of the taxes imposed under Chapter 2 or Chapter 3 of this part upon the taxpayer declaring the dividends." The purpose of the deduction "is to avoid double taxation at the corporate level of income which has already been subjected to California taxation in the hands of the dividend-declaring corporation." (*Safeway Stores, Inc.* v. *Franchise Tax Board, supra,* 3 Cal.3d 745, 749-750; italics omitted.)

As illustrated by our *Safeway* opinion (3 Cal.3d at pp. 753-755, fn. 9), the computation of the section 24402-deduction may become very complicated when the dividend-declaring corporation is a corporation which does business within and without the state or where it is part of a unitary business conducted within and without the state. Because of this complication and because the dividends involved are by definition deductible as well as excluded from the section 24344 computation of the interest deduction, it would unduly complicate, without beneficial results, the

In view of the complexity of the section, it is helpful to consider at the outset how the subsection operates in a situation not involving intercompany dividends. It must first be observed that subsection (b) only comes into play if the "income of the taxpayer is determined by the allocation formula contained in Section 25101," and this makes clear that we are only concerned with corporations which are engaged in multi-state operations, i.e., corporations which do business both within and without California and perhaps a corporation which is part of a unitary business conducted by it and affiliated corporations within and without California.[5]

Under subsection (b), it may be said that there are four steps in calculating the allowable interest expense. First, a deduction for interest expense is permitted to the extent that there is interest income subject to allocation by formula. In other words, interest expense is first used to cancel out interest income subject to allocation by formula.[6] This first step is not in issue in the instant case, and will not be considered in the remainder of this opinion.

The second step is to ascertain the amount of "interest and dividend income . . . not subject to allocation by formula." Under the first sentence of subsection (b), an amount of interest expense equal to that amount of income, is disallowed as a deduction. This is because the sentence only allows as a deduction the amount of expense that "exceeds" the described amount of income.

The third step is to allow as a deduction any excess interest expense, i.e., the amount of interest expense, if any, which "exceeds" the described amount of income.

The fourth step is that set forth in the second sentence of subsection (b). This provides that interest expense not allowed by the preceding sentence shall be offset against "interest and dividend income . . . not subject to allocation by formula." The latter income is exactly the same income

illustrations and computations which follow in this opinion. Although the parenthetical phrase will be ignored for the purposes of *illustrations* and *computations* that follow, the phrase will be considered for purposes of consideration of legislative intent.

[5]Amicus curiae, Frank M. Keesling, urges that the subdivision has no application to the multi-corporation situation. The argument of amicus will be considered later in this opinion, and it will be assumed in the meantime that the section may apply to multi-corporations conducting a unitary business.

[6]The board states that interest income subject to allocation would be interest income obtained in the course of operations, for example, the interest received by a department store for unpaid charge accounts. Interest income *not* subject to allocation would include by way of contrast interest from bonds owned by the corporation. No interest income of either type is at issue here.

referred to in step 2. Accordingly, the amount of interest expense equal to "interest and dividend income . . . not subject to allocation by formula" is allowed as an offset against the described interest and dividend income.

Another way of describing the operation of the last three steps is that interest expense must first be used to offset the quoted interest and dividend income and the remaining interest expense, if any, may be used to reduce net *operating* income.

To further explain the operation of subsection (b), it would seem desirable to start with an illustration of the subsection in a context where its operation is not disputed by the parties. Let us assume that a corporation has $10 net operating income from sources both within and without the state prior to the deduction of interest expense. Under the formula approved in *Edison California Stores* v. *McColgan, supra,* 30 Cal.2d 472 (dealing with how this income is to be apportioned to California and other states), 30 percent of the income is apportionable to California. In addition, the corporation owned some stock in corporations not engaged in a unitary business, which provided dividends totalling $5. Finally, assume that interest expense incurred by the corporation totalled $2.

Given the illustration, the important question then arises as to whether the interest expense is deductible from the operating income or from the dividend income. The importance of this determination may be illustrated by the following calculations of net taxable income as to a *domiciliary* corporation.

TABLE I

Interest Expense Deductible From Operating Results

Net operating income prior to interest expense . . . . . . $10.00
Interest Expense . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2.00
Net operating income . . . . . . . . . . . . . . . . . . . . . . . . $ 8.00
30 percent attributable to California . . . . . . . . . . . . . . . . . . $2.40
Dividend income . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.00
Net Taxable Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . $7.40

TABLE II

Interest Expense Deductible From Dividend Income With the Balance of Interest Expense, If Any, Deductible From Operating Income

| | | |
|---|---|---|
| Net operating income prior to interest expense......$10.00 | | |
| 30 percent attributable to California............. | | $3.00 |
| Dividend income ........................... | 5.00 | |
| Interest expense ........................... | 2.00 | |
| Net Investment Income ..................... | | 3.00 |
| Net Taxable Income ....................... | | $6.00 |

It is apparent from Tables I and II that the net income subject to tax will vary greatly (between $7.40 and $6 in the illustration) depending upon whether the interest expense is deducted from operating income or from investment income. This is due to the fact that only part (30 percent in the illustration) of the operating income and expenses is taken into account in determining the net income; whereas all of the income from dividends and interest (the investment income) is taken into account in computing the net income. To put the matter another way, if the interest expense is to be deducted from the operating income rather than from the dividend income, the taxpayer will lose 70 percent of the deduction.

None of the parties dispute that Table II reflects the proper result under subsection (b).

It is apparent that, when viewed in the light of a *domiciliary* corporation, subsection (b) does not deprive the taxpayer of any of its interest deduction but is merely an attempt to provide how the interest expense shall be allocated as between income from operations and income from investments. Further, the allocation of interest expense is very favorable to the domiciliary corporation in limiting the loss of the interest expense deduction which might otherwise occur.

The foregoing points up the logic upon which the subsection is based. This is rather simple to state in a general fashion. In essence, once we get beyond step one above (the cancellation of interest income appearing in the operations calculation) interest expense shall be deducted from investment income so far as possible rather than income from operations, and only the excess interest expense shall be used to offset income from operations.

In treating interest expense as the opposite of investment income (interest and dividend income), the subsection is obviously approaching the

problem presented in a reasonable manner. Interest expense is the opposite of interest income, and dividend income is sufficiently analogous to interest income that it is reasonable to provide for the offset of interest expense against dividend income. (This is not to say that another treatment of the interest expense would be unreasonable; the only point is that the approach of the Legislature was not unreasonable.)

When we turn to a *foreign* corporation doing business both within and without the state, receiving dividends from other corporations, and having interest expense, it is apparent that under the principle of *mobilia sequuntur personam* the dividends received by the foreign corporation are viewed as received at its domicile and such dividend income is not taxed in California. The dividend income is not taxable in California whether or not the dividends are paid by a corporation engaged in the same unitary business as the parent and whether or not the dividend-paying corporation engaged in a different business is a subsidiary.

Since the dividends are not taxable in California, the foreign corporation, unlike the domiciliary, will generally favor exclusion of dividends from the statutory phrase "interest and dividend income . . . not subject to allocation by formula." Using the figures of the prior illustration, the point may be illustrated as follows:

TABLE III

Dividends Excluded From the Quoted Phrase

Net operating income prior to interest expense......$10.00

Interest Expense ..............$2.00

Less dividends included
in the quoted phrase............ 0.00

Deductible Interest Expense ................-.... 2.00

Net Operating Income ....................... 8.00

30 percent attributable to California................... $2.40

This is the position favored by Pacific in general. It is Pacific's position at least as to all of the dividends, other than those paid by Nevada Bell ($2,329,250) to Pacific and those paid by nonmembers of the Bell System ($8,344,594), namely, Pacifiic's position at least as to $761,448,405 of dividends.

TABLE IV

Dividends Included in the Quoted Phrase

Net operating income prior to interest expense......$10.00

Interest Expense .............$2.00

Less dividends included
in the quoted phrase........... 5.00

Deductible Interest Expense ................... 0.00

Net Operating Income ......................$10.00

30 percent attributable to California.................. $3.00

Table IV represents the board's position except as to the effect to be given to the Nevada Bell dividends. (The effect to be given to the Nevada Bell dividends as it relates to the interest expense deduction will be considered at the end of this opinion.)

## CONTENTIONS AS TO CONSTRUCTION OF PHRASE "INTEREST AND DIVIDEND INCOME . . . NOT SUBJECT TO ALLOCATION BY FORMULA"

Two different constructions of subsection (b) are offered to exclude the dividends at issue from the term "interest and dividend income . . . not subject to allocation by formula." First, it is suggested that the dividend income referred to is only taxable dividend income. Second, it is asserted that intercompany dividends should be excluded where the corporations paying and receiving the dividends have filed a combined report of operating income. The two contentions would reach different results on the facts of the case. Under the taxable income approach, all dividends but the Nevada Bell dividends would be excluded from "dividend income." Under the intercompany dividend approach, all dividends received from the Bell System would be excluded but not the $8,344,594 of dividends received from others. Nevertheless, the parties often put the contentions together.

We reject both constructions of the statute and agree with the board that intercompany dividends whether taxable or not and whether a combined report is used or not come within the phrase "interest and dividend income . . . not subject to allocation by formula."

## INCLUSION OF NONTAXABLE DIVIDENDS IN THE SUBSECTION (b) COMPUTATION

Dividends received by a foreign corporation come within the literal language of subsection (b). Although these dividends are not *taxable* income, taxable income is not the term used by the subsection. This con-

clusion is reinforced because there is an exception, placed in parentheses, in both sentences of the subsection of certain dividends, which are not taxed, i.e., "dividends deductible under the provisions of Section 24402." The inclusion of this exception is unnecessary if all nontaxable dividends are to be excluded from the computation.

Not only do the dividends discussed come within the language of the subsection but they come within the logic of the subsection, which, as we have seen, is to offset interest expense so far as possible against investment income. When a corporation of the Bell System not domiciled in California receives a dividend from General Motors, the dividend must be considered investment income, and this is true even though the dividend is not taxed in California.

The third reason that we should not read the qualification of taxable income into the subsection is that otherwise there may be a loophole. A foreign corporation could avoid all taxes in California merely by increasing its borrowing to create an interest deduction and then purchasing stocks which pay dividends. Since under the principle of *mobilia sequuntur personam,* the dividends will not be taxed, the corporation would have created a deduction for the interest expense without the offsetting income. To avoid the loophole, the deduction must be reduced by the income even though the income cannot be taxed in California.[7]

A fourth reason, although perhaps not a strong one alone, for refusing to limit dividends to taxable dividends, is the phraseology of the section. It was pointed out above that as to a domiciliary corporation the subsection is not a limitation on interest expense but merely establishes a method to allocate the expense. Nevertheless the phraseology of the subsection is that of limitation, and this indicates that in some situations the subsection must act as a limitation on the amount of interest expense. The limitation view is reinforced because of a letter to former Governor Knight by the board prior to his signing the legislation before us which states that the addition of the provision before us will increase taxes on foreign corporations while reducing those of domestic corporations.

---

[7]It has been suggested that the possible loophole would be closed in any event by section 24425 which disallows deductions allocable to one or more classes of income not included in the measure of the tax. (Cf. *Great Western Financial Corp.* v. *Franchise Tax Bd.,* 4 Cal.3d 1, 5-6 [92 Cal.Rptr. 489, 479 P.2d 993].) However, subsection (b) deals specifically with the allowability of the interest deduction of corporations which allocate by formula; whereas section 24425 deals with the allowability of deductions generally. Thus, if, contrary to the views expressed herein, subsection (b) were construed as prohibiting the reduction of the interest expense deduction by nontaxable dividends, this construction of subsection (b) might prevail over section 24425.

Inclusion of nontaxable dividends in the subsection (b) computation does not mean that California is taxing dividends of a foreign corporation contrary to the doctrine of *mobilia sequuntur personam*. The dividends are not being taxed. They are being used to offset or reduce the interest expense deduction, and, as pointed out above, it is not unreasonable to use investment income to offset investment expense. Indeed inherent in Pacific's position is an apportionment of the interest expense to offset income which is not to be taxed in California. Even under Pacific's approach, only 10.3422 percent of interest deduction will be used to offset income attributable to California, which, of course, is 10.3422 percent of the total income of the Bell System.

In other words, since the California franchise tax is measured by net income derived from or attributable to sources within this state (§ 25101), both income and expenses must be apportioned between sources within the state and sources without the state where the corporation is engaged in activities within and without the state. The apportionment of expenses to offset income from sources without the state does not mean that the out-of-state income is being taxed so long as it is not unreasonable to use the expense to offset the out-of-state income. California uses two methods to apportion the income, one for operating income and another for dividend income, and it is not unreasonable to view interest expense as investment expense and require that the interest expense be used to offset the investment income, the interest and dividend income. This is true whether or not the investment income is included in the measure of the California tax. Accordingly, the requirement that dividend income, whether or not included in the measure of the tax, be used to offset or reduce the interest expense deduction does not mean that the dividend income is being taxed.

It has also been suggested that California is not concerned with dividends received by American, which is not a domiciliary of this state, from another corporation, which has no income attributable to California, and that therefore such dividends must be ignored in determining the California tax. At the outset it must be pointed out that the fact that the corporation declaring the dividend does no business in the state points in the direction of tax consequences in California rather than away from such consequences. Under section 24402, dividends declared from income due to California activities are deductible, and subsection (b) in the parenthetical phrase expressly excludes those dividends from the subsection computation. Thus, the dividends which have tax consequences under the franchise tax are those which are *not* declared from income due to California activities. The point is illustrated by *Safeway*. The entire latter part of the opinion is concerned with the elimination of dividends declared

from income due to California activities so that the dividends declared from out-of-state income may be taxed when received by a domiciliary. It bears repetition in this connection that *Safeway* involved intercompany dividends. The conclusion is inescapable that the fact that the corporation declaring the dividend did no business in California does not mean that the dividends should have no tax consequences in California.

Although dividends received by a nondomiciliary like American are not taxable in California, it is not true that such dividends are totally unrelated to California. As pointed out above in connection with the discussion of the possible loophole, a foreign corporation should not be permitted to borrow money and build up its interest expense deduction and then receive tax exempt dividends on the basis of investments made with the borrowed money. California has a substantial interest in making sure that income attributable to this state is not distorted by use of the interest expense deduction, and under subsection (b), the dividends received are only taken into account to offset the interest expense deduction. It is fully consistent with our franchise tax to give tax consequences, with respect to the interest deduction, to dividends declared by a corporation which does not do business in California where those dividends are received by a foreign corporation.

■ For the foregoing reasons, we conclude that we should not read the term "taxable" into the phrase in subsection (b), "interest and dividend income . . . not subject to allocation by formula," and that dividends are includable in the subsection (b) calculations whether they are taxable or not.

### INCLUSION OF INTERCOMPANY DIVIDENDS IN THE SUBSECTION (b) COMPUTATION

Let us now turn to the claim that dividends received from subsidiary corporations engaged in a unitary business (intercompany dividends) are not included in the quoted phrase of subsection (b). This claim has been made in a variety of ways. The primary basis of the claim is that such dividends are mere intercorporate transfers of funds and do not represent "real" income.

It must be deemed settled that, at the time relevant here, our corporate franchise tax treated such dividends as "real" income subject to taxation where appropriate. (*Safeway Stores, Inc.* v. *Franchise Tax Board, supra,* 3 Cal.3d 745, 749-753.) In *Safeway,* we determined that dividends received by a domiciliary corporation from subsidiary corporations engaged in a unitary business were includable in the computation of income for tax purposes.

This was the starting point in the case.[8] The problem was phrased differently, namely, whether Safeway should be treated for tax purposes as a single corporation engaged in a unitary business or whether it should be treated as multi-corporations so that intercompany dividends of the corporations engaged in the unitary business would be taxed. In deciding that the latter was the proper treatment, we decided that Safeway, which is a domiciliary, would be taxed for dividends received from subsidiaries to the extent that those dividends were paid by the declaring corporation from portions of unitary income not allocated to California.[9]

Let us return to the illustrations to point up the importance of *Safeway* and its effect. Assume now that the dividends received of $5 were intercompany dividends rather than dividends from unaffiliated corporations. As to *domiciliary* corporations, Tables I and II again express the possible results, and again Table II expresses the proper result, so that the net taxable income is $6 rather than $7.40. Under *Safeway*, we established as to domiciliaries that the intercompany dividends received from subsidiaries are to be treated substantially the same as dividends received from companies which were not part of the unitary group.[10] There is no reason to

[8] The balance of the opinion was concerned with the deduction of dividends permitted by section 8, subdivision (h)(1) of the Bank and Corporation Franchise Tax Act (now § 24402), which permitted deduction of dividends " 'declared from income which has been included in the measure of the tax imposed by this act upon the . . . corporation declaring the dividends . . . .' " (3 Cal.3d at p. 749; italics added.) We pointed out that income of the declaring corporation not attributable to California is not included in the measure of the tax of that corporation when the apportionment formula is applied as to the operating income of the unitary group. We were then concerned with the calculation of the income attributable to and not attributable to California so that the proper proportion of the dividends of the unitary group will be taxed.

Pacific's contention herein is that all dividends of the unitary group should be excluded from the subsection (b) calculation. Subsection (b) itself excludes dividends deductible under the provisions of section 24402. This is the effect of the parenthetical phrase, "(except dividends deductible under the provisions of Section 24402)." Since 24402 dividends are deductible and are expressly excluded from the subsection (b) computation, they will be ignored for purposes of discussing the contention that *all* intercompany dividends should be excluded from the subsection (b) computation. (It may be recalled that for purposes of simplicity we previously ignored the section 24402 dividends in the illustrations and computations used herein.) (See fn. 4.)

[9] It is helpful to remember that *Safeway* did not involve a new principle of taxation law but in general affirmed a tax practice followed by the board since 1947 at least.

[10] The computation of the dividend deduction under section 24402 is much more complex as to dividends from members of the unitary group as shown by footnote 9 in *Safeway* than as to dividends of nonmembers. Nevertheless, the goal is the same: to permit deduction of dividends paid from income taxed in California. It bears repetition that for purposes of simplicity we are ignoring the section 24402 deduction for purposes of the illustrations and computations herein.

make a distinction between the two types of dividends because under *Safeway* they will both be taxed to an equal extent. In view of *Safeway*, every reason offered to accept Table II in the earlier part of this opinion dealing with dividends of nonaffiliated corporations applies with equal force to intercompany dividends received by a domiciliary.

Actually, the argument is even stronger. In the domiciliary situation, if a distinction is to be made between intercompany and other dividends, it should be made in favor of inclusion of the intercompany dividends in the subsection (b) computation. The only reason to distinguish is that the intercompany dividends do not supposedly represent "real" income, and thus should result in lower taxes than dividends of unaffiliated corporations, which do represent so-called "real" income. The proper way, if this distinction is to be made, would be to provide that the interest expense may be offset against the intercompany dividends but not the unaffiliated corporation dividends because the use of the offset for a domiciliary corporation, as we have seen comparing Tables I and II, has the effect of *reducing* taxes. In other words, in order to reduce the taxes of domiciliary corporations receiving intercompany dividends in the light of the provisions of subsection (b), we must include those dividends in the phrase "interest and dividend income . . . not subject to allocation by formula."

As to the domiciliary corporation, we are satisfied that the term "interest and dividend income . . . not subject to allocation by formula" must include intercompany dividends. Otherwise, the taxes of such corporations are greatly and unreasonably increased.

Once it is concluded that the term "interest and dividend income . . . not subject to allocation by formula" includes intercompany dividends in the cases of domiciliary corporations and also includes nontaxable dividends, the same rule must apply to intercompany dividends paid to foreign corporations. There is no language in the section which permits a distinction between the different corporations or the different dividends. The logic underlying the section, to offset interest expense against investment income applies with equal force to all of the corporations and all of the dividends.[11]

---

[11]This is true only so long as the Legislature views intercompany dividends as income. When the Legislature decides that such dividends are no longer income as it did when it recently enacted section 25106, it is only reasonable to also eliminate such dividends from the subsection (b) computation. This is because the Legislature no longer considers such dividends investment income. The Legislature did exactly that. Section 25106 provides both that intercompany dividends are *not income and that they shall be excluded from the subsection (b) computation.*

## ADDITIONAL CONTENTION AS TO THE CONSTRUCTION OF SUBSECTION (b) MADE BY AMICUS CURIAE, FRANK M. KEESLING

It is urged that subsection (b) is applicable only where a single corporation engages in a unitary business both within and without the state and is not applicable where the unitary business is carried out by several affiliated corporations. Amicus points out that section 24344 uses the singular term "taxpayer," not the plural, and urges that when there are several corporations in the group, some may be foreign corporations not doing business within the state, that literally such corporations are not taxpayers, and that their interest expense is not subject to the limitation. Amicus concludes that literally construed subsection (b) is not applicable to the situation where several corporations file a combined report, that there would then be a hiatus in the statutes as to interest expense in this situation, and that we should fill the gap by adopting rules for the interest deduction analogous to those that would be applied to the case of a single taxpayer conducting a unitary business both within and without the state.[12] It is further concluded that, since such a single taxpayer could not receive intercompany dividends, intercompany dividends should be disregarded in computing the interest expense deduction where there is a group of corporations rather than a single corporation conducting the unitary business.

There are several defects in this line of reasoning. First, even assuming that the word "taxpayer" is limited to a corporation which does business within the state, section 24344 could be applied to the multi-corporation situation, and there is no need to resort to the adoption of rules by analogy. The word "taxpayer" appears in both subsections of section 24344, and subsection (a), it will be recalled, is the section which makes interest expense a deduction. Applying "taxpayer" as urged and the balance of the section literally would mean that the only interest expense allowed under subsection (a) would be that of the corporation doing business in California, and according to subsection (b) the only dividends to be used to reduce that interest expense would be those received by the corporation doing business in the state. Thus, all interest paid by corporations which, although members of the unitary group, did no business in California would be entirely ignored and so would the dividends received by those corporations. Interest and dividends which would be recognized in California would then be treated the same as outlined in the earlier part of

---

[12]Subsection (b) only applies if "income of the taxpayer is determined by the allocation formula contained in Section 25101, . . ." This means that the subsection does not come into play at all unless the corporation does business within and without the state.

this opinion. For example, the interest paid by Pacific would be taken into account under subsection (a) as a deduction, and then under subsection (b) dividends received by Pacific would be taken into account to reduce the deduction. The same would be done with American, Western Electric, and Bell Laboratories, each of which does some business in California and therefore would be a "taxpayer." Interest expense and dividend income of the remaining corporations of the Bell System would be entirely ignored.

The argument of amicus must be rejected because even assuming his definition of "taxpayer" were correct, his next premise would not follow. Contrary to his position, the statute could still be applied to the multi-corporation situation, and there would be no need to adopt rules by analogy.

Moreover, even if we were required to resort to analogy, it appears that amicus has chosen the wrong analogy. The problem is whether to analogize to a single corporation conducting a unitary business in several states or to a corporation receiving dividends from unaffiliated corporations. In *Safeway,* where we were concerned with a unitary business and intercompany dividends for purposes of income, we concluded that those dividends would be treated substantially the same as dividends from unaffiliated corporations and rejected the argument that, since no tax would be due if there was only a single corporation, intercompany dividends should not be taxable. (3 Cal.3d at p. 749.) The same should be true where, as here, we are concerned with intercompany dividends for purposes of calculating the interest expense deduction.[13]

We are satisfied that the argument made by amicus is intrinsically unsound, and it is unnecessary to consider other objections to his argument.

THE NEVADA BELL DIVIDENDS

Although Pacific took a contrary position in the earlier stages of this litigation, it concedes that, in the light of our *Safeway* decision, it, as a domiciliary corporation, must include in its income the dividends received from its wholly owned subsidiary, Nevada Bell. Those dividends totalled $2,329,250.

Pacific contends that, assuming its position as to intercompany dividends is rejected in other respects, it is entitled to offset this income by interest

---

[13]In support of its construction of subsection (b), Pacific also claims that the multi-corporation engaged in a unitary business should be treated the same as a single corporation engaged in the business. This claim must be rejected for the same reasons that the analogy of amicus is rejected.

expense. The computation involved is the fourth step described above; the second sentence of subsection (b) provides that interest expense not allowed as a deduction under the first sentence shall be offset against "interest and dividend income . . . not subject to allocation by formula." The board does not dispute that an offset is permissible. The controversy relates to the amount of the offset.

Pacific claims that it may offset the dividend income from Nevada Bell by the entire $226,715,715 interest expense of the Bell System, by Pacific's allocable portion of the entire expense (10.3422 percent of $226,715,715 = $23,447,393) or by the interest actually and directly paid by Pacific, $29,838,722. Under any of the three computations, the dividend income from Nevada Bell will be cancelled entirely.

The board allowed a deduction of $686,949 for interest expense against the Nevada Bell dividends. The board reached this figure on the theory that, since the total interest, which was to be offset by the total dividends under subsection (b), was exceeded by those dividends, a pro rata offset was appropriate. The amount of total interest was approximately 30 percent of the amount of total dividends; thus for each dollar of dividends included in taxable dividend income Pacific was permitted an interest expense deduction of approximately 30 cents.

The second sentence of subsection (b) provides that interest expense "shall be" offset against "dividend income." The term "dividend income," as we have seen, includes all of the dividends whether taxable or not, and the interest expense includes all of the interest whether paid by Pacific or not. Where, as here, the dividends exceed the interest, the pro rata approach of the board is correct.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Schauer, J.,* concurred.

Respondent's petition for a rehearing was denied August 9, 1972. Sullivan, J., did not participate therein.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.