Daniel J. MURRAY, d/b/a Big Sky Toyota, Plaintiff-Appellee,

v.

TOYOTA MOTOR DISTRIBUTORS, INC., and Toyota Motor Sales, U.S.A., Inc., Corporations, Defendants-Appellants.

Nos. 80–3271 to 80–3273.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1981.

Decided Jan. 7, 1982.

Rehearing Denied Feb. 8, 1982.

Walter E. Huizenga, McLean, Va., amicus curiae for Murray.

William J. Gibbons, Hedlund, Hunter & Lynch, Chicago, Ill., for Toyota Motor Sales.

James R. Safley, Minneapolis, Minn., argued, for plaintiff-appellee; Bradley B. Parrish, Lewiston, Mont., James R. Safley, Minneapolis, Minn., on brief.

Before BROWNING, Chief Judge, WRIGHT, Circuit Judge, and WEIGEL,[*] District Judge.

PER CURIAM:

Toyota Motor Distributors, Inc. (TMD) and Toyota Motor Sales, U.S.A., Inc. (TMS), respectively distributor and importer of Toyota automobiles in the United States, terminated the Lewistown, Montana, Toyota dealership of Appellee Daniel Murray. Murray brought this suit. TMD and TMS appeal from a judgment entered on a special jury verdict for violations of sections 1 and 2 of the Sherman Act, section 3 of the Clayton Act, and the Automobile Dealers' Day in Court Act. Midland Implement Co., a subdistributor for TMD during part of the time at issue, was not a defendant but was found by the jury to have been a co-conspirator.

1. Single Economic Enterprise

 Affiliated corporations that are in substance "a single business unit separated only by the technicality of separate incorporation," are incapable of conspiring under section 1 of the Sherman Act. *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 802 (9th Cir. 1976). Although "common ownership

---

[*] Honorable Stanley A. Weigel, District Judge, United States District Court for the Northern District of California, sitting by designation.

and control does not liberate corporations from the impact of the antitrust laws," *Kiefer-Steward Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed. 219 (1951), "the mere formality of separate incorporation is not, without more, sufficient to provide the capability for conspiracy." *Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 456 (9th Cir. 1979). "In general, affiliated corporations cannot conspire with each other where they function as a single economic unit." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 927 n.5 (9th Cir. 1980).

■ TMD and TMS contended they were incapable of conspiring with one another because they are a single economic enterprise. Murray contended the contrary. The district court instructed the jury that TMD and TMS were capable of conspiracy as a matter of law.[1] Although sufficient evidence existed for a properly instructed jury to conclude TMS and TMD were not a single economic unit and therefore were capable of conspiracy, sufficient evidence also existed to allow the jury to conclude the contrary. The instruction given, which effectively took this issue from the jury, was improper. The portion of the judgment relating to violations of § 1 of the Sherman Act at times when Midland Implement Co. was not a co-conspirator must be vacated.

### 2. Sufficiency of Evidence of Exclusive Dealing

■ There was sufficient evidence from which the jury could find that Murray was prevented from selling other lines of new cars. The jury reasonably could have believed TMD had an exclusive dealing policy and, but for this policy, Murray would have sought and obtained another dealership.

### 3. Definition of Manufacturer

TMD and TMS contend the Dealer's Day Act does not apply to them because they are not automobile "manufacturers" to whom alone the Act applies. The act defines "manufacturers" to include any "corporation which acts for and is under the control of" a manufacturer of automobiles. 15 U.S.C. § 1221. The district court directed a verdict for Murray on the issue of control.

■ The evidence in the record was sufficient to permit a jury to find that TMS and TMD were controlled by Toyota Motor Company. It was not, however, sufficient to preclude the jury from finding otherwise. *Marquis v. Chrysler Corp.*, 577 F.2d 624 (9th Cir. 1978), is inapposite; in that case control by the manufacturer was "undisputed." *Id.* at 629. The judgment in *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519 (S.D.N.Y.1972) did not estop TMS and TMD on the issue of control; that case dealt with a different period of time, and Murray did not show the material facts were unchanged in the interim. It was error to direct a verdict for Murray.

### 4. Testimony of Former TMD Employee John Garrett

■ The deposition testimony of Garrett that TMD had a policy of seeking to enforce exclusive dealing clauses, taken in connection with a suit brought against TMD and TMS in Arizona, was properly admitted under Fed.R.Evid. 804(b)(1). TMD and TMS had a "similar motive" in that case and this to cross-examine Garrett as to the existence of the policy even though his responsibilities at TMD involved Arizona, Nevada, Texas, and parts of California rather than Montana. The motive need only be "similar," not identical. There is nothing to suggest that TMD's policy in this respect, if it existed, would not have extended to Montana.

Although TMD and TMS argue they did not enforce exclusive dealing requirements in sparsely populated areas, we can take judicial notice that large areas of Nevada,

---

1. The instruction read:
 A contract, combination or conspiracy violative of Section 1 of the Sherman Act may exist between separate corporations, such as the defendants TMS and TMD, even though the defendant TMS is a wholly-owned subsidiary of defendant TMS. Any restraint of trade may result from a conspiracy among those who are affiliated or integrated under a common ownership as well as a conspiracy among those who are otherwise independent.

New Mexico, and Texas are as sparsely populated as Montana. Finally, Garrett resided in California, beyond the reach of a subpoena from the district court in Montana, and was therefore "unavailable" within the meaning of Fed.R.Evid. 804(a).

5. Testimony of Mr. Frank

TMD and TMS contend the district court erred in striking part of the testimony of their expert witness, Mr. Frank, because he was not qualified to criticize the methodology of Murray's second expert witness. Appellants misstate the district court's ruling. The court was "not challenging Mr. Frank's qualification," RT v. 13, p. 56, but rather granted the motion to strike for lack of proper foundation. Mr. Frank was permitted to criticize the methodology of Murray's first expert on redirect examination, RT v. 13, pp. 45–47, because appellee's counsel asked about it on cross-examination. RT v. 13, pp. 18–20, 24, 40–41. However, the methodology of Murray's second expert was not addressed during cross. "The practice is uniform that [redirect examination] is normally limited to answering any new matter drawn out in the next previous examination." McCormick, *Evidence*, § 32. The scope of redirect examination is entrusted to the district court's discretion. *United States v. Lopez*, 575 F.2d 681, 686 (9th Cir. 1978). There was no abuse of discretion here.

6. Allegedly Inconsistent Verdict

TMD and TMS contend that the jury's special verdict was prejudicially inconsistent because the jury found Murray had not participated in a conspiracy to sell only Toyota automobiles in violation of § 1 of the Sherman Act, but also found TMD and TMS had sold Toyota cars to Murray "on the condition, agreement or understanding" that he not sell other brands of cars, in violation of § 3 of the Clayton Act. 15 U.S.C. § 14. The verdicts are not inconsistent. The jury could have found TMS and TMD had imposed the exclusive dealing condition on Murray unilaterally, and that submission to such a condition did not amount to participation by Murray in the conspiracy.

7. Excessive Damages

Contrary to the district court's instructions, the jury awarded Murray more in damages for the period after his dealership was terminated than Murray sought in his complaint. Such an award cannot stand. 6A Moore's Federal Practice ¶ 59.-08[4] at 59–139. Remittitur would be appropriate if there were "no genuine issue of fact as to the amount of recoverable damages," *Id.*, ¶ 59–08.[4] at 59–140, but since the amount of post-termination damages was contested, a new trial on this issue is necessary.

*Conclusion*

The judgment is affirmed insofar as it rests upon violation of § 3 of the Clayton Act and of § 1 of the Sherman Act while Midland Implement Co. was a co-conspirator. The remainder of the judgment is VACATED and REMANDED for further proceedings consistent with this opinion. The award of attorneys' fees is VACATED and REMANDED for the district court's reconsideration after proceedings on remand.