680 F.2d 1263
 1982-2 Trade Cases 64,863
 James M. THOMSEN, Travis Gatus, John M. Brennan, Jerald R.
Jakl, Larry R. Johnson, Anthony T. Pellegrino,
individuals, Appellants,
v.
WESTERN ELECTRIC CO., INC., The Pacific Telephone and
Telegraph Company, American Telephone and
Telegraph Company, Appellees.
 No. 81-4190.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1982.
Decided July 6, 1982.
 
 James Duryea, Jr., San Francisco, Cal., for appellants.
 Michael H. Salinsky, Pillsbury, Madison & Sutro, San Francisco, Cal., for appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* district judge.
 GOODWIN, Circuit Judge.
 
 
 1
 Plaintiffs appeal from a summary judgment in favor of Western Electric, Pacific Telephone, and American Telephone and Telegraph Co. 512 F.Supp. 128.
 
 
 2
 The central issues are: (1) whether the defendants were entitled to judgment as a matter of law on plaintiffs' claims of violations of § 1 of the Sherman Act; and (2) whether the plaintiffs had standing to sue Western for alleged violations of § 2 of the Sherman Act. Six employees filed a private antitrust action in district court claiming that the defendants contracted, combined, and conspired to restrain interstate trade and commerce in violation of § 1 of 15 U.S.C. § 1. Specifically, the employees claimed: (1) that there was an agreement that Pacific would refuse to consider, to negotiate with, or employ any craft person employed by Western, (2) that Pacific agreed with Western not to employ any Western craft employee unless he or she resigned from Western and waited for six months; (3) that Pacific agreed not to employ any craft person from Western without first seeking a release from Western; (4) that Pacific and Western agreed not to compete for craft employees of either company; and (5) these agreements were enforced by blacklists and refusals to deal.
 
 
 3
 The employees also claimed that Western violated § 2 of the Sherman Act, 15 U.S.C. § 2, by initiating and inducing the alleged contracts, combinations and conspiracies as an unlawful means of maintaining monopoly power in the sale of telecommunication services and telephone equipment. These claims were joined with a variety of pendent state claims asserting various theories of recovery.
 
 
 4
 In granting summary judgment on the antitrust claims, the court also dismissed the pendent state claims without prejudice[1].
 
 
 5
 Generally, summary judgment is disfavored in "complex antitrust litigation where motive and intent play leading roles...." Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Accord, Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 668 (9th Cir. 1980). Harvey v. Fearless Farris Wholesale, Inc., 589 F.2d 451, 454 (9th Cir. 1979).
 
 
 6
 Poller does not, however, preclude summary disposition of antitrust cases. First Nat. Bank v. Cities Service, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). This court has said, in connection with applying Fed.R.Civ.P. 56(c) to antitrust cases:
 
 
 7
 "Once the allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, if the plaintiff then fails to come forward with specific factual support of its allegations of conspiracy, summary judgment for the defendant becomes proper." Mutual Funds Investors v. Putnam Management Co., 553 F.2d 620, 624 (9th Cir. 1977) quoting ALW, Inc. v. United Airlines, Inc., 510 F.2d 52, 55 (9th Cir. 1975).
 
 
 8
 Accord: Harvey v. Fearless Farris Wholesale, Inc., 589 F.2d at 454.
 
 
 9
 In granting summary judgment on the § 1[2] claims, the district court found the employment restraints to be protected from antitrust liability because AT& T, Pacific and Western are so closely affiliated within the Bell System as to make employment policy a matter of internal management. AT&T owns 100 percent of the shares of Western and 90 percent of the shares of Pacific.
 
 
 10
 A conspiracy requires a "plurality of actors concerting their efforts toward a common goal". Mutual Fund Investors, Inc. v. Putnam Management Co., 553 F.2d 620, 625 (9th Cir. 1977). Common ownership and control will not insulate corporations from the impact of antitrust laws if they "hold themselves out as competitors." Kiefer-Stewart Co. v. Seagram & Sons, 340 U.S. 211, 215, 71 S.Ct. 259, 261, 95 L.Ed.2d 219 (1951). Accord: Perma Mufflers v. Int'l Parts Corp., 392 U.S. 134, 141-142, 88 S.Ct. 1981, 1985, 20 L.Ed.2d 982 (1968); United States v. Yellow Cab Co., 332 U.S. 218, 227, 67 S.Ct. 1560, 1565, 91 L.Ed. 2010 (1947); William Inglis v. ITT-Continental Baking Co., 668 F.2d 1014 (9th Cir. 1981); Harvey v. Fearless Farris Wholesale, Inc., 589 F.2d at 456. However, the mere fact of separate incorporation, without more, is not "sufficient to prove the capability for conspiracy."
 
 
 11
 On the capacity of intra-enterprise entities to conspire, this court has held that there is a single "business unit separated by the technicality of separate incorporation" where the parent and subsidiary corporations are controlled by a single individual. Knutson v. Daily Review Inc., 548 F.2d 795, 802-03 (9th Cir. 1976), cert. denied, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977). Two factors in Knutson arguably made the corporations legally "incapable of conspiracy", (1) common ownership and discretion and (2) lack of intra-enterprise competition.[3] See also Murphy Tugboat v. Shipowners & Merchants Towboat, 467 F.Supp. 841, 858, affirmed sub nom, Murphy Tugboat Co. v. Crowley, 658 F.2d 1256 (9th Cir. 1981). "To determine whether corporate entities are separate enough to be capable of conspiracy, a court must examine the particular facts of the case before it." Las Vegas Sun, Inc. v. Summa Corp, 610 F.2d 614, 617, cert. denied, 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980).
 
 
 12
 Even if appellees possessed the capacity to conspire, the personnel agreements in question do not violate § 1 if the corporate entities are sufficiently affiliated for the matter to be one of internal management. See William Inglis v. ITT-Continental Baking Company, 668 F.2d 1014; Murphy Tugboat Co. v. Crowley, 467 F.Supp. at 860. Thus, actions of affiliated corporations which touch only on internal operations and have no anti-competitive consequences cannot violate § 1.
 
 
 13
 The evidence that AT&T, Western and Pacific constituted a "common enterprise" is overwhelming. (1) The FCC has held that the Bell System was "centrally managed by AT&T." The parent company, AT&T decided "virtually all important policies and practices" in the Bell System. AT&T, 64 F.C.C.2d 1, 13, n.21 (1977). See also Pacific Telephone and Tel. Co. v. Franchise Tax Bd., 7 Cal.3d 544, 102 Cal.Rptr. 782, 498 P.2d 1030 (1972). (2) The Bell System filed a single, consolidated federal income tax form. (3) AT&T had a corporate policy of representing itself and the other Bell companies as a single enterprise with a common logo ("The Bell System"). (4) Bell laboratories develop products and services for the entire system. (5) Western and local operating companies continuously lend management and nonmanagement personnel. (6) Labor negotiations between the Bell companies and the union, the Communication Workers of America, were conducted on a systemwide basis. The plaintiffs present no plausible evidence to counter the district court's findings and conclusions.
 
 
 14
 The employment agreements did not involve anyone outside the "corporate family." The companies had no policy concerning the movement of skilled employees outside the Bell System. "Where such concerted action restrains no trade and is designed to restrain no trade other than that of the parent and its subsidiaries, Section 1 is not violated." Report of the Attorney General's National Committee to Study the Antitrust Laws 34 (1955). We agree.
 
 
 15
 This case is essentially an effort to turn a labor dispute into an antitrust action for treble damages. The plaintiffs wanted to change employers with all their seniority and benefits intact. The proper place for a dispute of this kind is at the bargaining table between Bell and its employees' union. The defendants raised the labor exemption to the antitrust laws as a defense in the district court but the district court did not address this argument and we need spend no more time on it.
 
 
 16
 The district court also found that the plaintiffs lacked standing under § 2 of the Sherman Act[4], because their alleged injury did not fall within the target area of defendants' conduct. In Re Multidistrict Vehicle Air Polluntion M. D. L. No. 31, 481 F.2d 122 (9th Cir. 1973), cert. denied, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). The plaintiffs had alleged that Western monopolized the market for sales, distribution, manufacture, and installation of telephone systems. The district court found that the allegation referred only to the product market and not the labor market. The employees did not compete or purchase from Western, so they were not the target of the alleged violation. Any injury suffered was incidental.
 
 
 17
 The employees also attempted to tie the § 2 claim with the § 1 claim. This court has said that a § 1 claim insufficient to withstand summary judgment cannot be used as the sole basis for a § 2 claim. Bushie v. Stenocord Corporation, 460 F.2d 116, 121 (9th Cir. 1972).
 
 
 18
 A further infirmity in the § 2 claim is the absence of a causal connection between the alleged monopolization and the personnel policies. In Ostrofe v. Crocker, 670 F.2d 1378 (9th Cir. 1982), the court stated that an employee dismissed because he refused to participate in a conspiracy to rig prices and allocate customers has standing to bring a private treble damage action against the employer under § 4 of the Clayton Act, 15 U.S.C. § 15. But Ostrofe does not help plaintiffs in this case. There is no discernible causal connection between the alleged injury (monopolization of telecommunication services and equipment) and the personnel agreements attacked under § 1. Limitations on the mobility of skilled labor within the Bell system do not affect Western's alleged monopolization. Indeed, these limitations may make workmen more available to competing companies. This result would be procompetitive. Accordingly, contriving standing in this case would accomplish nothing to further enforcement of the antitrust laws.
 
 
 19
 AT&T, Western and Pacific are closely affiliated to comprise a common enterprise. The personnel agreements challenged by these plaintiffs are matters of internal policy with no anti-competitive effect on those outside the corporate family. The district court's summary judgment on the § 1 claims is affirmed. Because plaintiffs lacked standing to sue under § 2 and because the alleged monopolization is not causally related to the injuries alleged, summary judgment on the § 2 claim is also correct.
 
 
 20
 Affirmed.
 
 
 
 *
 The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 Plaintiffs also alleged that the agreement, between AT&T, Western, and Pacific violated Art. 1, Section 7 of the California Constitution and constituted intentional interference with prospective economic advantages. The district court's ruling on the state law claims has not been appealed
 
 
 [2]
 Section 1 of the Sherman Act, 15 U.S.C. § 1 provides:
 "Section 1. Trusts, etc., in restraint of trade illegal; penalty
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court."
 
 
 [3]
 Murphy Tugboat v. Merchants Towboat, 467 F.Supp. 841, 859 n. 15, affirmed sub nom, Murphy Tugboat v. Crowley, 658 F.2d 1256 (9th Cir. 1981), indicates that there is some confusion over who should determine the capacity issue:
 "The capacity issue was submitted by the Court to the jury, which apparently encountered great difficulty in dealing with it. On reflection, it seems to the Court to be more of a legal than factual issue (at least where, as here, none of the relevant facts are disputed) and hence more properly resolved by the Court, but there appear to be no reported decisions on this question."
 It is not necessary to reach this question in this case.
 
 
 [4]
 Section 2 of Sherman Act, 15 U.S.C. § 2, provides:
 " § 2. Monopolizing trade a felony; penalty
 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court."