Don **WILLIAMS**, aka Donald Williams, Plaintiff,

v.

**I.B. Fischer NEVADA, I.B. Fischer Properties, Inc., Ira Fischbein, Foodmaker, Inc., Does I–X and Corporate Does XI–XX, Defendants.**

No. CV–S–90–464–RDF (RJJ).

United States District Court, D. Nevada.

Feb. 14, 1992.

Ian Christopherson, Las Vegas, Nev., for plaintiff.

J. Randall Jones, John W. Field, Jones, Jones, Close & Brown, Las Vegas, Nev., for defendants.

James R. Olson, Rawlings, Olson & Cannon, Las Vegas, Nev., for Foodmakers, Inc.

ORDER

PRO, District Judge.

## I. INTRODUCTION

Plaintiff, Don Williams ("Williams") has asserted a claim against Defendants, I.B. Fischer Properties, Inc. and Ira Fischbein ("Fischer") and Foodmaker, Inc. ("Foodmaker") for violation of the Sherman Antitrust Act, sections 1 and 2 ("the Act"), and for tortious interference with prospective advantage. Doc. No. 12. Additionally, Williams has asserted a claim against Fischer for intentional infliction of emotional distress, for wrongful discharge, for breach of the covenant of good faith and fair dealing, and for violating public policy by "blacklisting" him in violation of NRS § 613.210. Doc. No. 12.

Williams has moved for partial summary judgment on the Sherman Antitrust claims. Doc. No. 32. Foodmaker seeks summary judgment on all of Williams's claims. Doc. No. 28. Fischer seeks partial summary judgment on the Sherman Antitrust claims. Doc. No. 30.

The Honorable Roger D. Foley, Senior United States District Court Judge, has referred this matter to the undersigned for consideration. For the following reasons, Plaintiff's motion for partial summary judgment will be denied. Defendants' motions for summary judgment and partial summary judgment will be granted.

## II. FACTS

Defendant Foodmaker is a franchisor of Jack-in-the-Box restaurants. Defendant Fischer owns a Jack-in-the-Box franchise in Las Vegas, Nevada pursuant to a franchise agreement with Foodmaker. Contained in this agreement is a "no-switching" clause whereby the parties agree not to offer employment to a manager of another Jack-in-the-Box within six months of termination from employment at a previous restaurant without a written waiver from the previous owner. The purpose of this agreement is to prevent the franchises from "raiding" one another's management employees after time and expense have been incurred in training them.

The Plaintiff, Don Williams, was the manager of the Jack-in-the-Box owned by Fischer. Williams learned that a Jack-in-the-Box was going to be opened in Bullhead City, Arizona and entered into negotiations with the owner for employment. The owner offered the position to Williams.

In late April 1990, Williams gave thirty (30) days written notice of his intent to resign to Fischer. The parties dispute whether this resignation was contingent upon Fischer providing a release pursuant to the "no-switch" agreement or whether the release was simply a request. Fischer refused to give Williams the release and the owner of the Bullhead City Jack-in-the-Box refused to hire him without the release. Fischer then terminated Williams's employment prior to the thirty day period.

Williams has alleged that the agreement between Foodmaker and Fischer constitutes a violation of section 1 and 2 of the Sherman Antitrust Act and tortious interference with prospective advantage. Williams has further alleged against Fischer intentional infliction of emotion distress, wrongful discharge, breach of the covenant of good faith and fair dealing, and violation of public policy by "blacklisting" him in violation of NRS § 613.210.

## III. ANALYSIS

### 1. STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(c). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to find by a preponderance of the evidence in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). The nonmoving party has the burden of "showing that there is a genuine issue for trial" by presenting specific facts beyond the pleadings. Fed.R.Civ.P. 56(c); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. If the nonmoving party fails to make a sufficient showing on an essential element of its case—on which he has the burden of proof—the moving party is entitled to a summary judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. However, in deciding a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Accordingly, it is not the function of this court to weigh the evidence or engage in credibility determinations. *Id.*

## 2. SECTION 1 OF THE SHERMAN ANTITRUST ACT

Williams has asserted that the "no-switching" agreement between Fischer and Foodmaker violates section 1 of the Sherman Antitrust Act in that it adversely affects the supply of labor in the Jack-in-the-Box system and the products supplied by such labor. The Act provides in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. 15 U.S.C.A. § 1 (Supp.1991).

■ In determining whether a restraint is unreasonable, the primary considerations are whether the intent of the restraint is anti-competitive and whether the restraint itself has significant anti-competitive effects. *Sherman v. British Leyland Motors, Ltd.,* 601 F.2d 429, 449 (9th Cir.1979).

In January of 1991 this court addressed this issue in the context of a motion to dismiss for failure to state a claim for which relief could be granted. While addressing issues raised by Williams's amended complaint, the analysis and basic import of that holding remains unchanged.

■ To prove a Sherman Act § 1 violation, Williams must show that Foodmaker and Fischer "conspired" to restrain trade. *Las Vegas Sun, Inc. v. Summa Corp.,* 610 F.2d 614, 617 (9th Cir.), *cert. denied* 447 U.S. 906, 100 S.Ct. 2988, 64 L.Ed.2d 855 (1980). To determine whether corporate entities are separate enough to be capable of conspiracy, a court must examine the particular facts before it. *Id.* Although the nature of an entity and its ability to combine or conspire in violation of section 1 is a fact question, *Murray v. Toyota Motor Distributors, Inc.,* 664 F.2d 1377, 1379 (9th Cir.), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2905, 73 L.Ed.2d 1314 (1982), here the material facts are undisputed and a decision by this court is appropriate. *See Los Angeles Memorial Coliseum Com'n v. N.F.L.,* 726 F.2d 1381, 1387 (9th Cir.), *cert. denied* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984) (the organization and the nature and extent of cooperation among the clubs was a matter of record so a directed verdict was appropriate given that reasonable minds could not differ on the issue).

■ In determining that Foodmaker and Fischer were incapable of conspiring, this court relied extensively on *Thomsen v. Western Electric Co., Inc.,* 680 F.2d 1263 (9th Cir.) *cert. denied* 459 U.S. 991, 103 S.Ct. 348, 74 L.Ed.2d 387 (1982). In *Thomsen,* the Ninth Circuit analyzed a § 1 charge levelled against Western Electric, Pacific Telephone, and their parent corporation, American Telephone and Telegraph Company (AT & T). Employees charged that Western Electric and Pacific Telephone entered into agreements prohibiting

Pacific Telephone from negotiating or employing a Western Electric employee within six months after the employee's resignation, and then, only if Western signed a release. *Id.* at 1265.

In finding that the evidence of "common enterprise" was overwhelming, the court in *Thomsen* focused on the fact that: (1) the FCC has held that the Bell system was centrally managed by AT & T with virtually all important policies and practices being decided by the Bell System; (2) AT & T had a corporate policy of representing itself and other Bell companies as a single enterprise with a common logo; and (3) Bell laboratories developed products and services for the entire system.[1] *Thomsen,* 680 F.2d at 1266–67. Additionally, the court stated that the agreements did not involve anyone outside the corporate family and where such concerted action restrains no trade and is designed to restrain no trade other than that of a parent and its subsidiaries, section 1 is not violated. *Id.* at 1267.

As this court previously held, the cornerstone of the Ninth Circuit analysis for a § 1 violation—competition between entities—does not exist in this case. In a fast-food franchise the franchisor does everything to promote a uniform, non-competitive environment between the franchises: Each franchise serves substantially the same products; the products are served to the public in the same manner; the franchisor develops products and services for all franchises; the employees dress alike; the decor of each franchise is similar; the franchises are advertised as a single enterprise with a single logo; and the franchisor

contracts with each franchise for exclusivity within a certain geographic area to minimize competition between the franchises. Additionally, here, as in *Thomsen,* the "no-switching" agreements do not involve anyone outside the Jack-in-the-Box system.[2]

Williams has set forth three bases for asserting that Foodmaker and Fischer are separate, competing entities. The first of these is that the franchises have the ability to vary their prices on the various items the franchises serve. On a motion for summary judgment all justifiable inferences are to be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). However, the inference that the franchises are competing entities, simply because they are able to vary their prices, is not justifiable. Because of the geographic restriction upon the locations of the franchise, a consumer would usually have to travel to a less conveniently located Jack-in-the-Box to avail themselves of the lower prices. The food is relatively inexpensive to begin with so that any savings would likely be outweighed by the expense and inconvenience of obtaining it. A more reasonable explanation is that the ability to vary prices enables the franchises to compete with other fast food enterprises in the same locality. Another possibility is that this price flexibility simply takes into account variations in the different costs associated with operating a franchise in a different geographic area.

Secondly, Williams argues that Foodmaker and Fischer are separately in-

---

**1.** Other factors considered by the court but not applicable to this case were: (1) the Bell System filed a single, consolidated federal income tax form; (2) western and local operating companies continuously lent management and non-management and nonpersonnel; and (3) labor negotiations were conducted on a system wide basis. This list was not intended to be exhaustive nor are each of the factors listed a necessary prerequisite to a finding that several corporations act as a "common enterprise." The list is merely illustrative of factors that the court should consider.

**2.** Williams was free to seek employment outside of the system. While Williams relies on a Tenth Circuit case to argue that labor can be a basis

for an antitrust claim, *Nichols v. Spenser International Press, Inc.,* 371 F.2d 332 (7th Cir.1967), this is not in dispute. *Nichols* involved an agreement between two encyclopedia companies who agreed not to hire each other's sales people. *Id.* The court found this agreement to be an anti-trust violation because the companies were competing entities and the agreement restrained employees for six months after they had terminated their employment relationship with one of the companies. It is fundamentally different from the situation presented here in that the franchises are not competitors and Williams could have sought employment with another fast food restaurant.

corporated entities and therefore capable of conspiring. He further argues that because no parent and subsidiary relationship exists, Foodmaker and Fischer are operated as separate economic entities and that their arrangement is properly characterized as a licensing agreement. The Ninth Circuit has held that the mere formality of separate incorporation is not, without more, sufficient to provide the capability to conspire. *Harvey v. Fearless Farris Wholesale, Inc.*, 589 F.2d 451, 456 (9th Cir.1979). The threshold requirement of concerted activity is missing among multiple corporations operated as a single entity when corporate policies are set by one individual or by a parent corporation. *General Business Systems v. North American Philips Corp.*, 699 F.2d 965, 980 (9th Cir.1983).

■ For two separate corporations to act as a single entity, it is not necessary that one be owned, wholly or in part, by the other corporation. The presence of a parent and subsidiary relationship is not an essential element. The emphasis is properly placed upon the commonality of interest of the corporations and the degree of control exercised by the dominant corporation. As previously noted, the franchisor does everything in its power to minimize competition and promote uniformity between franchises. This is for the benefit of both the franchisees and the franchisor. As Jack-in-the-Box restaurants prosper because of the uniformity of quality food and service, each franchise benefits from an enhanced reputation which results in an increase in business, as does the franchisor who is able to sell more franchises at a higher prices. Additionally, their economic unity of interest continues beyond the payment by the franchisee of the licensing fee. The franchisor continues to receive both a royalty fee and a marketing fee based upon a percentage of the restaurants gross sales.

Lastly, Williams contends that the labeling of Fischer as an "independent contractor" in the franchise agreement requires a finding that Fischer and Foodmaker were not operating as a single entity. In the twenty-four page franchise agreement, Foodmaker sets operating policies dictating things such as the restaurants hours of operation, the type of equipment that can be used by the restaurant, that the franchisee carry insurance that is approved by Foodmaker and even how far the owner of the franchise may live away from the restaurant. The agreement goes even farther in allowing Foodmaker to micro-manage the restaurant by requiring that Fischer comply with all of the specifications contained in detailed manuals supplied by Foodmaker. Whatever label the parties choose to attach to their relationship it is clear that Foodmaker exercises almost complete control over all of the decision effecting the operation of the restaurant. This plenary control, in addition to Foodmaker's and Fischer's common economic goals, make them a single enterprise, incapable of competing for purposes of Section 1 of the Sherman Act.[3]

### 3. GROUP BOYCOTT

Williams also argues that the Foodmaker and Fischer conspiracy not to hire each other's employees by virtue of the "no-switching" provision constitutes a group boycott in violation of § 1 of the Sherman Act. Because nothing in the amended complaint warrants this court's altering its determination that Foodmaker and Fischer are incapable of conspiring, the previous analysis of Williams's claim remains unchanged.

**3.** The court in *Thomsen* noted that even if the parties possessed the capacity to conspire, the personnel agreements in question would not violate section 1 if the corporate entities are sufficiently affiliated for the matter to be one of internal management. *Id.* (citing *William Inglis v. ITT-Continental Baking Co.*, 668 F.2d 1014 (9th Cir.), *cert. denied* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982)). Actions of affiliated corporations which touch only on internal operations and have *no anti-competitive consequences* cannot violate § 1. *Id.* Even if this court were to conclude that Foodmaker and Fischer were only affiliated corporations, their "no-switching" agreement concerns only internal operations and has no anti-competitive consequences.

In a group boycott, actors at one level of trade refuse to deal with actors at another level. *Denver Rockets v. All–Pro Management, Inc.*, 325 F.Supp. 1049 (C.D.Cal.1971); *Klor's Inc. v. Broadway–Hale Stores, Inc.*, 359 U.S. 207, 212, 79 S.Ct. 705, 709, 3 L.Ed.2d 741 (1959). Group boycotts are either per se illegal, or they violate the rule of reason. Group boycotts are per se illegal only when they are engaged in by competitors. *FTC v. Indiana Fed'n of Dentists*, 476 U.S. 447, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986); *Calculators Hawaii, Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1337 n. 2 (9th Cir.1983). The Jack-in-the-Box franchises constitute a common enterprise that are incapable of intra-enterprise competition. The hiring prohibition does not therefore constitute a group boycott which is illegal per se.

Under the rule of reason, an inquiry must be made as to whether the purpose and effect of the hiring agreement were anti-competitive. *Calculators Hawaii, Inc.*, at 1337. The purpose of the agreement is to prevent the franchises from hiring away each other's management employees. This agreement does not bar competitors of Jack-in-the-Box from hiring away these managerial employees. It only prohibits movement between the various franchises and since they are not competing with each other, the agreement cannot be anti-competitive.

## 4. SECTION 2 OF THE SHERMAN ANTITRUST ACT

Williams has also assert a claim under Section 2 of the Sherman Act which provides in pertinent part:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed

guilty of a felony ... 15 U.S.C.A. § 2 (Supp.1991).

Williams asserts that a specialized labor market for Jack-in-the-Box management employees exists and the "no-switching" agreement limits the quantity of the labor supply and this in turn affects the price of labor and drives up the price of the products offered to the public. He further asserts that it is the intent of the retail franchises and the Jack-in-the-Box advertising system to create a "submarket for products" which are unique to the franchises and that the intent and effect is to limit and restrict competition with respect to these markets.

Establishing a section 2 violation requires (1) the possession of monopoly power in the relevant market, (2) the "willful acquisition or maintenance" of that power, and (3) causal antitrust injury. *Foremost Pro Color v. Eastman Kodak Co.*, 703 F.2d 534, 543 (9th Cir.), *cert. denied* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984) (citing *Forro Precision, Inc. v. IBM Corp.*, 673 F.2d 1045, 1058 (9th Cir.1982)).

The parties argue for different definitions of the relevant markets. Williams position is that the relevant markets are the labor market for Jack-in-the-Box managers and the market for specific Jack-in-the-Box products.[4] Foodmaker and Fischer, however, argue that the relevant markets are the labor market for restaurant managers in general and the market for fast food products. This circuit has held that market definition and market power are essentially questions of fact. *See, e.g., Oahu Gas Service, Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 363 (9th Cir.), *cert. denied* 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988); *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1299 (9th Cir.), *cert. denied* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400

---

**4.** It is doubtful that Williams would be able to establish "the Jack-in-the-Box system," as he refers to it, as the relevant market for determining whether a section 2 violation has occurred. It is the nature of all companies to have control over their own products and employees. Drawing the definition of the relevant market as narrowly as Williams proposes would subject every business to antitrust liability which cannot have been the intent behind section 2 which is concerned with conduct which is anti-competitive in nature and effect.

(1982). This factual dispute, however, does not preclude the granting of summary judgment because Williams cannot establish the second element necessary for a section 2 violation.

The second element of a section 2 violation is the willful acquisition and maintenance of monopoly power. This is distinct from growth or development that results as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). "The test for willful maintenance or acquisition of monopoly power is whether the act complained of unreasonably restricts competition." *Drinkwine v. Federated Publication, Inc.*, 780 F.2d 735, 739 (9th Cir.1985), *cert. denied*, 475 U.S. 1087, 106 S.Ct. 1471, 89 L.Ed.2d 727 (1968). Whether specific conduct is anti-competitive is a question of law. *Oahu Gas Service*, 838 F.2d at 368 (citing *Western Concrete Structures Co. v. Mitsui & Company (U.S.A.), Inc.*, 760 F.2d 1013, 1016 (9th Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985)).

Here, this court has held that Foodmaker and Fischer operated as a single enterprise and lack the ability to compete. The "no-switching" agreement only effects Williams's ability to move within this enterprise and has no impact upon other businesses that may be interested in Williams's skills as a manager. The agreement is not anti-competitive and thus cannot violate section 2.

Williams's claim that it is the intent and effect of the Jack-in-the-Box system, in part through advertising, to create a demand for their own product and then monopolize it, is untenable as an argument for violation of section 2. There is nothing anti-competitive about creating a demand for a product through advertising. Product differentiation is a basic marketing technique. Additionally, there is nothing inherently anti-competitive about having a monopoly over the supply of one's own products. Section 2 does not render illegal all monopolies, only those obtained through anti-competitive conduct. *See Foremost*

*Pro Color*, 703 F.2d at 543. Because Williams cannot show any anti-competitive conduct it is unnecessary for this court to address the third element of causal antitrust injury.

The elements necessary to establish a claim for attempted monopolization under section 2 are (1) specific intent to control prices or destroy competition (2) predatory or anti-competitive conduct directed to accomplishing the unlawful purpose, and (3) a dangerous probability of success. *Foremost Pro Color v. Eastman Kodak Co.*, 703 F.2d 534, 543–544 (9th Cir. 1983) (citing *Janich Brothers, Inc. v. American Distilling Co.*, 570 F.2d 848, 853 (9th Cir.), *cert. denied* 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978)). Because there has been no anti-competitive conduct, Williams cannot establish a claim of attempted monopolization.

## 5. WILLIAMS'S STATE LAW CLAIMS

If a federal claim against a party is dismissed before trial, the pendant state law claims should be dismissed as well. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir.1985); *Jones v. Community Redevelopment Agency*, 733 F.2d 646 (9th Cir.1984). Williams's federal claims have all been dismissed. As such, the remaining state law claims should be dismissed without prejudice. *Copeland v. Desert Inn Hotel*, 99 Nev. 823, 673 P.2d 490, 492 (1983).

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Don Williams's Motion for Partial Summary Judgement is denied. Doc. No. 32.

IT IS FURTHER ORDERED that Defendant Foodmaker's Motion for Summary Judgment is granted. Doc. No. 28.

IT IS FURTHER ORDERED that Defendant Fischer's Motion for Partial Summary Judgement is granted. Doc. No. 30.