[No. A066452. First Dist., Div. One. Apr. 5, 1995.]

WILLAMETTE INDUSTRIES, INC., Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Respondent.

## COUNSEL

Lawrence V. Brookes for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Richard F. Finn and Paul D. Gifford, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**DOSSEE, J.**—This is an action for a refund of California corporation franchise taxes paid by Willamette Industries, Inc., an Oregon corporation,

for income year 1977. The question before this court concerns the proper tax treatment of dividends paid to Willamette by two subsidiary corporations.

## FACTS

The facts are undisputed. Plaintiff Willamette Industries, Inc., manufactures and distributes a variety of wood and paper products. Its principal place of business is in Oregon, but it does business in California and, hence, is subject to California franchise taxes.[1]

Until 1977, Willamette owned 50 percent of Brooks-Willamette, an Oregon corporation which was also engaged in the paper products business. Brooks-Willamette, in turn, owned 100 percent of Mobol Products, Inc., also an Oregon corporation. Although the operations of Brooks-Willamette and Mobol were fully integrated with the operations of Willamette, neither Brooks-Willamette nor Mobol did business in California, and neither was subject to California tax.

In June 1977, Willamette acquired the remaining 50 percent of Brooks-Willamette and changed the subsidiary's name to Bend-Willamette. (Hereafter, that subsidiary will be referred to as B-W.) Soon after the acquisition, B-W and Mobol paid substantial cash dividends to Willamette: B-W paid $2,650,000; Mobol paid $150,000. Only a portion of the dividends came from preacquisition earnings.

### Legal Framework

Before proceeding further, we briefly outline the legal framework within which the tax dispute is set.

### 1. *Dividends.*

As noted (fn. 1, *ante*), the corporation franchise tax is measured by the taxpayer's net income from business done within the state. (Rev. & Tax. Code, § 23151.)[2] Net income, of course, means gross income less allowable deductions. (§ 24341.) Today, as in 1977, the taxpayer's *gross* income includes dividends. (§ 24271; see also former § 24271, added by Stats. 1955, ch. 938, § 20, p. 1578, and former § 24453, added by Stats. 1955, ch. 938, § 20, p. 1591.)

---

[1]Every corporation doing business within the state must annually pay a tax, measured by its net income, for the privilege of exercising its corporate franchise within the state. (Rev. & Tax. Code, § 23151.)

[2]Unless otherwise noted, all further statutory references are to the Revenue and Taxation Code.

### 2. *Intercompany dividends.*

When a corporation owns or controls more than 50 percent of another corporation, the Franchise Tax Board may require a combined report and impose the tax on the combined net income. (§§ 25102, 25105.) Intercompany dividends paid out of such combined income are excludable if the corporations were engaged in a "unitary business."[3] (§ 25106.)[4]

### 3. *Unitary business.*

The United States Supreme Court has held that when a nondomiciliary corporation doing some business within the state receives dividends from a subsidiary having no other connection with the state, the state may not constitutionally tax the dividend income unless the recipient taxpayer corporation and its underlying subsidiary payor were engaged in a unitary business. (*ASARCO Inc.* v. *Idaho State Tax Comm'n* (1982) 458 U.S. 307 [73 L.Ed.2d 787, 102 S.Ct. 3103] [taxpayer did not have controlling ownership interest in payor corporation]; *F.W. Woolworth Co.* v. *Taxation & Revenue Dept.* (1982) 458 U.S. 354 [73 L.Ed.2d 819, 102 S.Ct. 3128] [business activities of parent and subsidiaries were not integrated].)[5] This is so because a state may not tax value earned outside its borders. In the absence of a unitary relationship, i.e., where the business activities of the dividend payer have nothing to do with the activities of the recipient within the taxing state,

---

[3]Even in the absence of a unitary business, where the payor corporation was subject to California tax, the recipient corporation may deduct from its gross income dividends which were declared from income already included in the measure of California franchise tax imposed upon the payor corporation. (§ 24402.) The purpose of this deduction is to avoid double taxation. (*Safeway Stores, Inc.* v. *Franchise Tax Board* (1970) 3 Cal.3d 745, 749 [91 Cal.Rptr. 616, 478 P.2d 48].) In order for the recipient corporation to claim the California deduction, however, the payor corporation must have had income from sources in California so that the payor corporation was subject to California tax.

[4]As it read in 1977, section 25106 provided as follows: "In any case in which the tax of a corporation is or has been determined under this chapter with reference to the income and apportionment factors of another corporation with which it is doing or has done a unitary business, all dividends paid by one to another of such corporations shall, to the extent such dividends are paid out of such income of such unitary business, be eliminated from the income of the recipient and shall not be taken into account under Section 24344 or in any other manner in determining the tax of any such corporation." (Stats. 1967, ch. 326, § 1, p. 1520.)

[5]Recently, the Supreme Court reaffirmed the unitary business principle as the "linchpin" for determining whether a state may constitutionally tax the dividend income of a nondomiciliary. The court went on to hold, however, that a unitary relationship is not a necessary prerequisite in all cases for apportionment of income to a nondomiciliary state. "What is required instead is that the capital transaction serve an operational rather than an investment function." (*Allied-Signal* v. *Director, Tax. Div.* (1992) 504 U.S. 768, 787 [119 L.Ed.2d 533, 552, 112 S.Ct. 2251].)

due process considerations preclude taxation of the dividends, as there is an insufficient connection between the subsidiary and the state. (*Allied-Signal* v. *Director, Tax. Div.*, *supra*, 504 U.S. 768, 777-778 [119 L.Ed.2d at pp. 545-546]; *ASARCO Inc.*, *supra*, 458 U.S. at pp. 316-318, 327-330 [73 L.Ed.2d at pp. 794-796, 802-804]; see *Mobil Oil Corp.* v. *Commissioner of Taxes* (1980) 445 U.S. 425, 441-442 [63 L.Ed.2d 510, 523-524, 100 S.Ct. 1223].)

### 4. *Multistate business.*

When a corporation derives its income from sources both within and without the state, the franchise tax is measured by the net income attributable to sources within the state. (§ 25101.) For purposes of dividing a corporation's income among the various states in which it does business, California applies the Uniform Division of Income for Tax Purposes Act (UDITPA). (§ 25120 et seq.) Under the UDITPA, a distinction is made between business income and nonbusiness income.[6] Business income is apportioned according to a three-factor formula (based upon the corporation's property, payroll and sales within the state). (§§ 25121, 25128.) Nonbusiness income, on the other hand, is not apportioned by formula; it is allocated to a single state. (§§ 25123-25127.) Dividends, insofar as they are investment income (nonbusiness income), are allocated to the state of the recipient corporation's commercial domicile. (§ 25126.)

### 5. *The interest offset rule.*

A deduction is available for California franchise tax purposes, as it is for federal income tax purposes, for interest paid or accrued on the taxpayer's indebtedness. (§ 24344, subd. (a).) However, the allowable California deduction for interest expenses of a multistate business is limited to the amount of interest which exceeds dividend income not subject to apportionment and therefore not subject to California tax. (§ 24344, subd. (b).)[7] The theory of this interest offset rule is that a corporation should not be able to borrow

---

[6]Business income is defined as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." (§ 25120, subd. (a).) Nonbusiness income is defined as all income other than business income. (§ 25120, subd. (d).)

[7]As it read in 1977, section 24344 provided as follows:

"(a) Except as limited by subsection (b), there shall be allowed as a deduction all interest paid or accrued during the income year on indebtedness of the taxpayer.

"(b) If income of the taxpayer is determined by the allocation formula contained in Section 25101, the interest deductible shall be an amount equal to interest income subject to allocation by formula, plus the amount, if any, by which the balance of interest expense exceeds interest and dividend income (except dividends deductible under the provisions of Section 24402) not

money to purchase stocks that pay dividends and then get a deduction for the interest while the dividend income (being investment or nonbusiness income) is not taxable. (See *Pacific Tel. & Tel. Co.* v. *Franchise Tax Bd.* (1972) 7 Cal.3d 544, 554 [102 Cal.Rptr. 782, 498 P.2d 1030].)

Thus, dividends which are nonbusiness income affect the tax liability of a multistate business by offsetting the allowable deduction for interest expenses. Dividends excludable pursuant to section 25106, however, are not to be used to offset interest. (§ 25106; fn. 4, *ante.*)

### Procedural History

Prior to 1977, dividends paid to Willamette by Brooks-Willamette and by Mobol were reported entirely to Oregon. For income year 1977, Willamette's California franchise tax return contained a combined report of the income of itself and its subsidiaries, B-W and Mobol. The tax return characterized the dividends paid to Willamette by the subsidiaries as apportionable business income, but then eliminated the dividends on the theory that the dividends were excludable from income pursuant to section 25106.

Following an audit by the Franchise Tax Board (hereafter FTB), the FTB determined that the portion of the dividends paid from earnings before the acquisition of B-W were not paid out of unitary income and, hence, nearly $1.5 million of the dividends were added back into Willamette's 1977 business income. This recomputation of Willamette's income resulted in additional tax due.

Willamette appealed to the State Board of Equalization (hereafter SBE), which determined that the FTB was correct in ruling that the dividends paid from pre-acquisition earnings should not have been eliminated from Willamette's income. However, the SBE further concluded that those dividends from pre-acquisition earnings were "nonbusiness income" allocable entirely to Oregon and not to California. The FTB sought rehearing on the latter point, arguing that the dividends should be *business* income. The SBE denied rehearing.

Willamette then filed a refund claim for $36,678. In considering that claim, the FTB recalculated Willamette's franchise tax for 1977 to conform to the SBE's decision. In that calculation the FTB applied the interest offset rule and disallowed a portion of Willamette's interest expenses by offsetting

subject to allocation by formula. Interest expense not included in the preceding sentence shall be directly offset against interest and dividend income (except dividends deductible under the provisions of Section 24402) not subject to allocation by formula." (Stats. 1957, ch. 543, § 1, p. 1600.)

the interest with the dividends from pre-acquisition earnings found by the SBE to be nonbusiness income. This recalculation resulted in an assessment of taxes in exactly the same amount as previously calculated by the FTB auditor. The refund claim was denied by operation of law, and Willamette again appealed to the SBE, but the SBE denied this second appeal. Willamette then filed suit, again seeking a refund of $36,678 in taxes for 1977.

At trial, the parties stipulated to the facts and posed two principal questions to the trial court: (1) whether the dividends received by Willamette from its subsidiaries should have been eliminated from its income pursuant to section 25106, even though the dividends were paid out of pre-acquisition earnings and profits; and (2) whether the dividends from pre-acquisition earnings were properly used to offset Willamette's interest deduction. The FTB re-argued its contention (made unsuccessfully to the SBE) that the dividends were business income, not nonbusiness income. Hence, the FTB asserted that the question concerning the interest offset rule need not be reached (as that rule applies only to nonbusiness income).

The trial court adopted the FTB's position and concluded that the FTB "properly included in Willamette's business income for the income year 1977, dividends received from [B-W and Mobol] and paid by those corporations out of earnings before they became unitary with Willamette in June 1977." Apparently because the trial court concluded the dividends constituted "business income," the trial court did not rule on Willamette's objections to the interest offset rule. Judgment was entered in favor of the FTB. Willamette appeals.

### DISCUSSION

### I. *Intercompany Dividends*

As noted above, section 25106 excludes from a corporation's income intercompany dividends (1) if the payor and recipient corporations were engaged in "a unitary business" and (2) to the extent the dividends were paid from the income of the unitary business. (See fn. 4, *ante.*)

The parties do not dispute that a unitary business has been judicially defined as one in which the following factors were present: (1) unity of ownership; (2) unity of operation; and (3) unity of use. (*Dental Ins. Consultants, Inc.* v. *Franchise Tax Bd.* (1991) 1 Cal.App.4th 343 [1 Cal.Rptr.2d 757]; *Butler Brothers* v. *McColgan* (1941) 17 Cal.2d 664, 678 [111 P.2d 334]; see also *F.W. Woolworth Co.* v. *Taxation & Revenue Dept., supra,* 458 U.S. 354, 364 [73 L.Ed.2d 819, 827-828] [whether unitary business exists

depends upon functional integration, centralized management, and economies of scale].)

Here, the parties stipulated that before June 1977 the three corporations were unitary in all but the first factor, unity of ownership. Further, the parties agreed that once Willamette acquired the remaining 50 percent of Brooks-Willamette, the corporations qualified as a unitary business. In the proceedings below, the FTB concluded the dividends paid from pre-acquisition earnings were not paid from "unitary business income" and the dividends did not qualify for the exclusion of section 25106 because before the June 1977 acquisition Willamette and its subsidiaries lacked unity of ownership.

On appeal, Willamette asserts that if, as the FTB's auditor found, there were no earnings and profits before June 2, 1977, so as to qualify Willamette for the section 25106 exclusion, then the distributions made to Willamette by B-W and Mobol, though labeled "dividends," should be treated as a return of capital, which would reduce the basis of the stock but would not be taxable income (former § 24453, subd. (b)). We do not find this argument persuasive. The auditor did *not* find there were no earnings and profits before June 2, 1977. The FTB auditor found that the earnings and profits were not *unitary* before June 2, 1977. It is that fact which disqualifies Willamette from the exclusion. Willamette conceded below that before June 2, 1977, the companies did not qualify as a unitary business because they lacked unity of ownership.[8] We can discern no error in the FTB's interpretation of the statute.

---

[8]We need not and do not decide whether California may constitutionally tax the portion of Willamette's dividends from B-W and Mobol paid from earnings when the subsidiaries were *not* engaged in a unitary business with Willamette. Willamette insists that there is no constitutional issue raised in this case. Willamette reported the dividends on its franchise tax return as apportionable business income, and the parties have not disputed that characterization.

Nevertheless, we note that the FTB has taken inconsistent positions. On the one hand, the FTB finds the section 25106 exclusion for intercompany dividends inapplicable to the dividends paid from pre-acquisition earnings because before the acquisition Willamette and its subsidiaries, Brooks-Willamette and Mobol, lacked 100 percent unity of ownership and therefore were not engaged in a unitary business. At the same time, the FTB argues, relying upon *Allied-Signal* v. *Director, Tax. Div., supra,* 504 U.S. 768, that those same dividends paid to an Oregon corporation are constitutionally taxable by California because the companies were as good as unitary, lacking only the unity of ownership. We leave it to the Legislature to decide whether section 25106 ought to be amended to conform to *Allied-Signal* so that the exclusion is extended to those nonunitary businesses whose activities are sufficiently connected that the intercompany dividends may constitutionally be taxed.

## II. *Business Income*

Willamette argues that if the dividends paid from pre-acquisition earnings did not qualify for the exclusion of section 25106, then they should not be treated, as the FTB treated them following the SBE's decision, as nonbusiness income (used to offset Willamette's interest deduction). Willamette argues that the dividends should be treated instead as business income. Presumably, Willamette by this argument seeks to avoid the application of the interest offset rule, which applies only to nonbusiness income (§ 24344, subd. (b)).

Yet, there is no controversy that the dividends should be treated as business income. At trial the FTB itself argued that the dividends should be treated as business income, despite the SBE's contrary decision. On appeal, the FTB again asserts that position. The trial court accepted the argument and declared the dividends to be business income. Inasmuch as the trial court's decision comports with Willamette's position, Willamette has not been aggrieved by the trial court's decision.

## III. *Double Taxation*

Willamette further argues that the FTB's use of the dividends from pre-acquisition earnings to offset Willamette's interest deduction constitutes improper double taxation. Willamette made the same argument, unsuccessfully, in its second appeal to the SBE. Willamette contends that the dividends are taxable first by Oregon as nonbusiness income allocable to Willamette's commercial domicile (§ 25126) and second by California as an offset against the California interest deduction (§ 24344). This issue, however, is moot. The dividends are business income, and the interest offset rule does not apply.

## IV. *TRASOP Deduction*

During the FTB audit, the FTB auditor discovered that Willamette was actually entitled to an additional deduction which it had not claimed—a so-called "TRASOP" deduction, named for the Tax Reduction Act of 1975 Employee Stock Ownership Plan. Willamette asserts that this deduction results in a reduced tax liability of $6,239. At trial, Willamette complained that in recalculating Willamette's taxes after the SBE decision, the FTB had not given Willamette the TRASOP deduction. The FTB did not dispute Willamette's entitlement to this deduction, but the trial court made no mention of it in its decision.

The FTB now asserts that Willamette has waived any error by its failure to object to the statement of decision. The FTB's argument goes too far. It is

true that by failing to raise any objection to the statement of decision, Willamette waived its right to complain about the absence of a finding. That is, this court may presume that the trial court found in favor of the FTB and found Willamette not entitled to the deduction. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1132-1134 [275 Cal.Rptr. 797, 800 P.2d 1227].)

Yet, in view of the FTB's concession below that Willamette is entitled to the deduction, such a presumed finding is unsupported by the record. Hence, the matter will be remanded for a determination of Willamette's entitlement to a refund based upon the undisputed TRASOP deduction.

The judgment is reversed in part, and the matter is remanded for the limited purpose of determining Willamette's entitlement to a refund based upon the TRASOP deduction. In all other respects, the judgment is affirmed. Each side shall bear its own costs.

Strankman, P. J., and Stein, J., concurred.

Petitions for a rehearing were denied May 4, 1995, and the opinion was modified to read as printed above.