Filed 7/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| M & L FINANCIAL, INC., | B312816 |
| Plaintiff and Appellant, | Los Angeles County |
| v. | Super. Ct. No. 20STCV12144 |
| SOTHEBY'S, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Bienert Katzman Littrell Williams, Michael R. Williams and Nancy J. Sandoval for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Todd E. Lundell, Adam F. Streisand, Bryan M. Wittlin and Meghan K. McCormick for Defendant and Respondent.

———————————

M & L Financial, Inc. (M&L) took 45 vivid yellow diamonds worth $4 million to Sotheby's for auction on consignment. M&L told Sotheby's it was the exclusive owner of the diamonds, but Sotheby's later released them to a stranger without telling M&L. The diamonds vanished. M&L sued Sotheby's, which escaped on demurrer. We reverse a breach of contract ruling, affirm a tort ruling, and remand. Statutory citations are to the Civil Code.

We independently review demurrer rulings, taking the complaint's allegations as true.

Leon Landver is the principal of M&L. We call the two M&L.

A man named Jona Rechnitz owed M&L "substantial" sums. As security for his debt, Rechnitz transferred ownership of 45 vivid yellow diamonds to M&L on the understanding Rechnitz could repurchase them at a fixed price.

Then Rechnitz had another idea: he proposed M&L list the diamonds with Sotheby's, an auction house. M&L had never dealt with Sotheby's, but Rechnitz said he had a long-standing relationship with an executive there named Quig Bruning. M&L did not know, but later learned, Bruning and Rechnitz were friends. Rechnitz had flown Bruning to Las Vegas in a private jet and had given Bruning valuable tickets to a sporting event.

Rechnitz proposed to introduce M&L to Bruning.

M&L, Bruning, and Rechnitz met in April 2019 at Sotheby's Los Angeles office. M&L brought the diamonds to the meeting, and that was the last it saw of them.

Bruning explained the first step in the auction process was for him to send the diamonds to Sotheby's New York office for appraisal. Depending on the results, Sotheby's would decide

whether to propose terms for the sale. M&L agreed to proceed as Bruning suggested.

Bruning began to fill out a printed form with many blank lines. The form was entitled "Sotheby's Consignment Listing." The front of the one-page form had empty spaces for a name, contact information, items, estimated value, and so forth.

On the back of the form was Sotheby's New York address and paragraphs of fine print titled "Conditions of Receipt." The fine print did not include an integration clause. It did include, however, a paragraph 7, which momentarily will assume importance because it states and indeed insists that the form is not the sum of the agreement: "If any of the terms of the consignment agreement between you and Sotheby's conflict with any of the terms herein, the terms of the consignment agreement shall prevail. No property will be offered for sale absent receipt by Sotheby's of a signed consignment agreement."

On the front of the "Sotheby's Consignment Listing" form is a space labeled "Consignor Name." The word "Name" is in the singular. No space exists for a second consignor name. The fine print on the back of the form does not address the possibility of more than one "consignor."

In the space for "Consignor Name," Bruning wrote "Jadelle Jewelry + M&L Financial Inc." Jadelle was the name of Rechnitz's company.

When Bruning included "Jadelle Jewelry" in the space labeled "Consignor Name," M&L immediately told Bruning this was not accurate because M&L was the sole owner of the diamonds and was the sole party providing them to Sotheby's. Bruning "indicated he understood." Rechnitz did not disagree.

3

Bruning wrote the estimated value of the diamonds was $4 million.

M&L signed the form as Bruning had written it, without altering the handwriting about "Jadelle Jewelry."

Bruning took the diamonds and gave the original of the form to M&L.

After the April 2019 meeting, M&L did not hear from Sotheby's. In late 2019, M&L phoned Bruning, who announced surprising news: Sotheby's had given the diamonds to someone named Levin Prado. Prado told Sotheby's he was picking up the diamonds on behalf of Rechnitz. Sotheby's had no written records about its release of the diamonds. Sotheby's had not mentioned its release of the diamonds to M&L.

M&L never recovered the diamonds and does not know where they went.

M&L sued Sotheby's and appended to its complaint a news article about how Rechnitz had been sentenced to 10 months in a New York "corruption scandal."

M&L amended its complaint. The trial court sustained Sotheby's demurrer with leave to amend. Our record does not explain the court's reasoning. M&L's second amended complaint alleged claims for breach of contract, negligence, and conversion. The court sustained Sotheby's demurrer to the contract and conversion claims without leave to amend, but it granted leave to amend as to the negligence count. Again, the record does not recount the court's logic. M&L's third amended complaint alleged one count of negligence. The trial court sustained Sotheby's demurrer without leave to amend. The court's order explained a person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.

4

M&L appealed.

M&L had stated a proper claim for breach of contract, so it was wrong to sustain the demurrer to this count.

The essence of this consignment contract was simple. M&L gave diamonds to Bruning, told him they belonged to M&L, and left them for Sotheby's to appraise in anticipation of a consignment sale. There was no agreement yet that Sotheby's definitely would auction the diamonds for M&L, but a potential auction was the point of Sotheby's involvement. Sotheby's breached this agreement by giving the diamonds to stranger Prado without M&L's permission. This breach cost M&L the value of the lost diamonds. (See, e.g., CACI No. 303 [breach of contract elements].)

Sotheby's sole defense rests on Civil Code section 1828, which fails because that law does not apply to this case.

Section 1828 is an old and little-used provision that has received scant attention in the past century. This section, unamended since its original enactment in 1907, provides as follows, with our emphasis: "When a deposit is *made in the name of two or more persons, deliverable or payable to either or to their survivor or survivors*, such deposit or any part thereof, or increase thereof, may be delivered or paid to either of said persons or to the survivor or survivors in due course of business."

The deal between M&L and Sotheby's was not a deposit "made in the name of two . . . persons." (We assume without deciding this was a "deposit.") On his form, Bruning wrote in his friend's company "Jadelle" along with M&L's name, but M&L immediately clarified, it is alleged, that M&L was the sole owner of the diamonds and was the sole party providing them to Sotheby's. Bruning assented and the deal went forward on this

basis.  Sotheby's then breached the contract by, without notice to M&L, giving M&L's diamonds to a stranger claiming to be Rechnitz's representative.

Sotheby's protests Bruning wrote "Jadelle" on the form, and so Jadelle and its principal Rechnitz had made the "deposit" in the name of two parties:  Jadelle and M&L.  At the demurrer stage, this protest is unavailing.  M&L alleged it explained the situation to Sotheby's, which manifested assent.  This allegation controls at this stage.

Sotheby's argues M&L errs by including oral terms about how M&L was the exclusive owner of the diamonds.  Sotheby's view is the written contract governs, pure and simple, and cannot be informed by what M&L told Sotheby's.

To the contrary is Justice Traynor's famous decision in *Pacific Gas & Electric Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 (*Thomas Drayage*), which pronounced California's rule for deciding when to allow recourse to extrinsic evidence in a contract case.  The test "to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible."  (*Id.* at p. 37; see also *Ri-Joyce, Inc. v. New Motor Vehicle Board* (1992) 2 Cal.App.4th 445, 452, fn.1 [applying *Thomas Drayage*].)

M&L's oral statement about exclusive ownership satisfies this test.  The conversation between M&L and Bruning is relevant to prove a meaning.  The language of Sotheby's form is reasonably susceptible of the meaning that the diamonds belonged only to M&L and, if released, were to be returned only to M&L.

Nothing in this spare form contravened M&L's assertion of ownership. Bruning extemporized by putting two names— Jadelle Jewelry and M&L Financial, Inc.—in the space for a single "Consignor Name." This handwritten improvisation created ambiguity. What were the respective rights and duties of Jadelle versus M&L? The form did not illuminate that question. M&L's oral statement did. Under *Thomas Drayage*, this allegation of an oral statement was relevant and proper.

Moreover, paragraph 7 of the form's "Conditions of Receipt"—which we quoted above with emphasis—shows even Sotheby's did not expect *and would not allow* this form to be the complete statement of all contractual terms between it and M&L. And, we repeat, there was no integration clause. In sum, Sotheby's form did not state the whole deal.

Sotheby's cites *Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 283 for the proposition that a plaintiff cannot allege that a defendant has breached a contract where the basis of the breach is contradicted by the terms of the contract attached to the complaint. This decision sparkles but does not apply here, for it involved a contract with an integration clause. (*Ibid.*) M&L's illuminating allegation does not contradict Sotheby's opaque form, which distinguishes *Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 956 ("The written sales contract attached to the complaint clearly shows that it is a contract between plaintiff and Shepherd, and not between plaintiff and Chicago"). Sotheby's other citation is far afield. (See *Holly Sugar Corp. v. Johnson* (1941) 18 Cal.2d 218, 226–227 [plaintiff may elaborate its complaint by appending a verified tax protest].)

7

In sum, it was error to sustain the demurrer to M&L's proper breach of contract claim.

As for M&L's negligence claim, however, the trial court's ruling was right.

The economic loss rule governs. "In general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." (*Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 922 (*Sheen*).) By deferring to the contract between parties, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other. (*Ibid.*)

M&L and Sotheby's had a contract. That controls. M&L offers no good reason for departing from the fundamental economic loss rule, which bars its tort claim.

M&L cites section 1852, which specifies a depository for hire must use at least ordinary care for the preservation of the thing deposited. M&L claims this section creates an exception to the economic loss rule and thus permits recovery in tort. This is incorrect.

"Using contract law to govern commercial transactions lets parties and their lawyers know where they stand and what they can expect to follow legally from the words they have written. But if a disappointed buyer has the option of abandoning the contract and suing in tort, the significance of the contract is diminished and the doctrines that protect the integrity of the contractual process are reduced in importance." (Farnsworth, *The Economic Loss Rule* (2016) 50 Val.U. L.Rev. 545, 553.) The Restatement states this form of the economic loss rule thusly: "there is no liability in tort for economic loss caused by negligence in the performance or negotiation of a contract between the

parties." (Rest.3d Torts, Liability for Economic Harm (June 2020) § 3; see also *Sheen*, *supra*, 12 Cal.5th at p. 923.)

Regarding conversion, M&L forfeited this argument by omitting legal authorities from its opening papers showing the trial court erred. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153.)

## DISPOSITION

We reverse the judgment and remand for further proceedings regarding M&L's breach of contract claim. We award costs to M&L.

WILEY, J.

We concur:

STRATTON, P. J.

HARUTUNIAN, J.[*]

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9